MR. MELVIN SHIELDS 47149#
_____
Name

HCF  PO BOX 1568
_____
Hutchinson Kansas, 67504
Hutchinson CORR Facility
_____
Address

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Mr. Melvin L Shields SR, Plaintiff<br>*(Full Name)* | CASE NO. 22-3298-JWL-JPO<br><br>(To be supplied by the Clerk) |
| V.<br><br>(20) Defendants,  , Defendant (s)<br>SEE Attached Affidavit in<br>Support of 42 USC3 1983 | CIVIL RIGHTS COMPLAINT<br>PURSUANT TO 42 U.S.C.<br>§1983 |

A. JURISDICTION

1) __Melvin Shields 47149__ , is a citizen of __Kansas__
   *(Plaintiff)*                                              *(State)*

   who presently resides at __Hutchinson Corr. Facility: Hcf PO Box 1568__
                                        *(Mailing address of place*

   __Hutchinson Kansas 67504__ .
   *of confinement.)*

2) Defendant __(20) Defendants: SEE Attached Affidavit__  is a citizen of
              *(Name of first defendant)* __plus (32) Exhibits.__

   _____ , and is employed as
                    *(City, State)*

   _____ . At the time the
              *(Position and title, if any)*

   claim(s) alleged in this complaint arose, was this defendant acting under the color of state

   law? Yes ☑ No ☐ . If your answer is "Yes", briefly explain:

   __Please SEE: Attached Affidavit in Support of__
   __1983; plus (32) Exhibits.__

1

3) Defendant _PLEASE SEE; ATTACHED Affidavit_____ is a citizen of

(Name of second defendant)

_____, and is employed as

(City, state)

_____. At the time the

(Position and title, if any)

claim (s) alleged in this complaint arose was this defendant acting under the color of state

law?  Yes ☑ No ☐ . If your answer is "Yes", briefly explain:

_____

_____

(Use the back of this page to furnish the above information for additional defendants.)

4) Jurisdiction is invoked pursuant to 28 U.S.C. §1343(3); 42 U.S.C. §1983. (If you wish to

assert jurisdiction under different or additional statutes, you may list them below.)

_____

_____

## B.  NATURE OF THE CASE

1) Briefly state the background of your case:

_pLease SEE; ATTACHED Affidavit in Support of_

_42 U.S.C.S 1983 civil Rights Suit with (32)_

_Exhibits ATTACHED._

_____

_____

_____

_____

2

## C.  CAUSE OF ACTION

1) I allege that the following of my constitutional rights, privileges or immunities have been

   violated and that the following facts form the basis for my allegations: (If necessary you

   may attach up to two additional pages (8h" x 11") to explain any allegation or to list

   additional supporting facts.)

   A) (1) Count I:  ___pleaSE SEE attacHED Affidavit in___

   ___SuppoEt of  42 USCS 1983 plus (32) ExHibits___

   _____

   (2) Supporting Facts: (Include all facts you consider important, including names of

   persons involved, places and dates. Describe exactly how each defendant is involved.

   State the facts clearly in your own words without citing legal authority or argument.):

   _____

   _____

   _____

   _____

   B)  (1) Count II: _____

   _____

   _____

   (2) Supporting Facts: _____

   _____

   _____

C) (1) Count III: _____

_____

_____

(2) Supporting Facts: _____

_____

_____

_____

## D.  PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1) Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the conditions of your imprisonment? Yes ☐ No ☑ . If your answer if "Yes", describe each lawsuit. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

    a)  Parties to previous lawsuit:

        Plaintiffs: _____

        Defendants: _____

    b)  Name of court and docket number _____

_____

    c)  Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?) _____

_____

    d)  Issues raised _____

_____

XE-2 8/82          CIVIL RIGHTS COMPLAINT §1983

e)  Approximate date of filing lawsuit _____

f)  Approximate date of disposition _____.

1)  I have previously sought informal or formal relief from the appropriate administrative

officials regarding the acts complained of in Part C Yes ☐ No ☑. If your answer is

"Yes", briefly describe how relief was sought and the results. If you answer is "No",

briefly explain why administrative relief was not sought.

_____

_____

_____

_____

## 2)  REQUEST FOR RELIEF

1)  I believe that I am entitled to the following relief:

pLEASE SEE: aHacHED Affidsvit in Support
of 42 U.S.C.S 1983 civil suit plus (32) Exhibits
AHacHED.

_____

_____

_____

_____          _____
Signature of Attorney (if any)                          Signature of Plaintiff

_____

_____

_____
(Attorney's full address and telephone number)

5

XE-2 8/82          CIVIL RIGHTS COMPLAINT §1983

## AFFIDAVIT IN SUPPORT OF 42 U.S.C.S 1983

## CIVIL RIGHTS LAWSUIT

I MELVIN LAVON SHIELDS SR 47149# FILE THIS LAWSUIT AGAINST THESE DEFENDANTS BELOW:

1). THE CITY OF OLATHE KANSAS: 111 S. CHERRY ST. OLATHE KANSAS 66061.

2). THE CITY OF KANSAS CITY KANSAS; 701 NTH 7TH ST. SUITE 945 KCK, 66101.

3). KCK DISTRICT ATTORNEYS OFFICE; 710 NT 7TH ST. KCK, 66101.

4). KANSAS CITY KANSAS POLICE DEPARTMENT. 700 MINNESOTA AVE. KCK 66101.

5). DETECTIVE TERRY MAST. (KCKPD). 700 MINNESOTA AVE. KCK 66101.

6). DETECTIVE FISCUS. (KCKPD).700 MINNESOTA AVE. KCK. 66101.

7). DETECTIVE SHOMIN. (KCKPD). 700 MINNESOTA AVE. KCK 66101.

8). THE JHONSON COUNTY CRIMINALISTIC LABORATORY. 11890 S. SUNSET DRIVE. OLATHE KANSAS. 66061.

9). GARY DIRKS OF (JCCL). 11890 S. SUNSET DRIVE. OLATHE KANSAS. 66061.

10). VALLERY FORNOW OF (JCCL). 11890 S. SUNSET DRIVE. OLATHE KANSAS 66061.

11). THE (KBI) OF THE STATE OF KANSAS. 1620 SW TYLER ST. TOPEKA KANSAS 66612.

12). BARBRA CRIM SWANSON OF THE (KBI). 1620 SW. TYLER ST. TOPEKA KANSAS 66612.

13). JAMES NEWMAN OF THE (KBI). 1620 SW. TYLER ST. TOPEKA KANSAS 66612.

14). DANIEL OBEMIER (PROSECUTOR). KCK DISTRICT ATTORNEY OFFICE. 710 NTH 7TH ST. KCK. 66101.

15). JENNIFER TATUM (PROSECUTOR). KCK DISTRICT ATTORNEY OFFICE. 710 NTH TH ST. KCK 66101.

16). DAVID SMITH (PROSECUTOR). KCK DISTRICT ATTORNEY OFFICE. 710 NTH 7TH ST. KCK 66101.

17). **(ALL) ANALYSTS OR CHEMISTS WHO TOUCHED DNA EVIDENCE OR ASSISTED IN THE CONSUMATION OF SAMPLES. 1620 SW. TYLER ST. TOPEKA KANSAS 66612. (KBI).**

18). DAVID GREENWALD (PROSECUTOR). 710 NTH 7TH ST. KCK 66101.

19). MARK DUPREE (DISTRICT ATTORNEY). 710 NT. 7th ST. KCK 66101.

**ALL THESE DEFENDANTS ARE BEING SUED IN THIER ( INDIVIDUAL) CAPACITIES FOR ALL THESE CAUSES OF ACTIONS MENTIONED BELOW:**

1). For violating shields 14th amendment due process rights and 10 to the bill of rights.

2). for violation of his 8th amendment right against crule and unusalpunishment.

3). for violating his 14th amendment " **proceedural due process rights", "substantive due process rights"**, and his **" civil rights"**;which guarantees fair procedure for the deprivation of a fair procedure, for the deprivation of a constitutionally protected interest in lie, liberty, or property.

4). for violating his **14th amendment "substantive" due process right**, which bars certain **arbititrairy, wrongful government actions regardless of the procedures used to impliment them.**

5). for **" fraud upon the court".**

6). perjury.

7). mishandling of evidence.

8). intentional **" bad faith destruction"**of biological evidence.

9). subject matter jurisdiction.

10). manufacturing evidence.

11). **Failure to produce "original electronic data disc" from windows.**

12). For **( collusion)** forcing pther state workers to conspire together **( to commit fraud of the court).**

13). Obstruction of administrative justice.

14). manifest injustice.

15). Tampering with evidence.

16). Failure to investigate.

17). Deprivation of constitutional rights.

18). Access to courts.

19). **Falsified affidavit information.**

20). failure to disclose.

21). **concealment.**

22). **direct personal involvement.**

23(. deliberate indiference

24). **FAILURE TO PRESERVE POTENTIALLY EXCULPATORY  EVIDENCE.**

25).  **UNAUTHORIZED ( CONSUMPTION ) OF DNA SAMPLE.**

26). PROSECUTORIAL MISCONDUCT.

27). **FALSE VIDEO FOOTAGE.**

28). Errorneous interpretation of data.

29).  **conspiracy.**

30). **Fabricated testimony.**

31). overt acts.

32). errorneous evidence.

33). **CONTEMPT OF COURT.**

34). ABUSE OF DISCRETION.

35). clear cut **malicious prosecution.**

36). **CONSUMING (ALL) DNA SAMPLE.**

37). DENIED DISCOVERY INFORMATION.

**THE PLAINTIFF MELVIN LAVON SHIELDS RAISES ALL OF THESE CLAIMS " BELOW" THAT ENTIAL ALL OF THE CAUSES OF ACTION MENTIONED ABOVE;** Shields raises (6) claims in total. they are: 1). **OSBORNE CLAIM. 2). ARMSTRONG CLAIM. 3). NAPPER**

**CLAIM.4). YOUNGBLOOD CLAIM. 5). DAVIS CLAIM. 6). FRAUD AND MALICIOUS PROSECUTION CLAIM.**

**1).** First shields raises a ; **WILLIAM OSBORNE CLAIM; DISTRICT ATTORNEYS OFFICE V. OSBORNE, 557**

3

U.S 52. shields due process righs were violated. **U.S CONST. AMEND (14) (1) PROVIDES THAT NO STATE SHALL DEPRIVE ANY PERSON OF LIFE,LIBERTY, OR PROPERTY WITHOUT DUE PROCESS OF LAW.** this clause imposes procedural limitations on a states power to take away protected entitlements.

DAN OBEMIER, JENNIFER TATUM, DAVID SMITH AND MARK DUPREE, violated my constitutuional rights **( BY NOT COMPLYING WITH THE PRODUCTION ORDER SIGNED BY JUDGE DEXTER BURDETT).** they never produced to the defense or to the court **" the original electronic disc".** nor did they turn over to GENETIC TECHNOLOGIES, which was the independant lab for the defense, **( the actual contents)** of cyro tube labled I-88-0464 that was presented at trial, that was said to contain  two cotton swabs, cuttings from the yellow panties of jolene.  **THEY NEVER COMPLIED WITH THE PRODUCTION ORDER FILED ON SEPT /7TH/19. THEY NEVER ALLOWED SHIELDS TO RE-TEST NONE OF THESE ITEMS BEFORE HIS TRIAL.**

K.S.A 60-237 (E) , compelling discovery, failure to comply; sanctions;

(e) failure to preserve electronic stored information. if the electronic stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take resonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court;

1). upon finding prejudice to another party, from loss of the information, may order measures no greater than necessary to cure the prejudice or;

2). only upon finding that the party acted with the intent to deprive another party of the informations use in the litigation , may;

(A) presume that the lost information was unavailable for the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party or;

(c) dissmiss the action or enter a default of judgement.

**KANSAS SUPREME COURT RULE 108**

**(a) GENERALLY**

**(1) " COURT RECORDS" INCLUDE**

as used in this rule, "court records" include ( all original) court records, documents, and filings,

including ( ELECTRONIC TRANSMISSIONS).

shields 5th amendment constitutional rights were violated because he was denied of his right to test all

biological evidence that the state mentioned at his trial. state denied shields **(access)** to the evidence asked for in his pro semotion for itemized items filed on 7/26/19.

**THE PROSECUTION HAD A PATTERN IN THIS CASE OF NOT COMPLYING WITH (ANY) ORDERS GIVEN BY THE COURT.**

As in the OSBORNE case; shields has a right to prove his innocence; by shields attorney paul dent not adopting shields pro se motion asking the coujrt to order the prosecution to turn over the contents of cyro tube 0464 that contained the so called rape kit swabs and panty cuttings that shields was bound

over trial based on; violated mr shields constitutional due process rights. shields made a oral claim of actual innocence on the record stating clearly and plainly **that the dna on those cotton swabs and cuttings in that tube was not his; all you have to do is re-test it right niow and you will see it is not.**

After the court denied shields pro se motion for innefective assistance of counsel because attorney did

not want shields to re-test no biological **(tangible evidence)**in his case. the court also denied him his 6th

amendment right to represent himself. shields rights were violated.

**AFTER THAT 3DAYS BEFORE SHIELDS INITIAL TRIAL DATE; AT A PRETRIAL HEARING AFTER COURT DENIED SHIELDS RIGHT TO RE-TEST (ALL) BIOLOGICAL EVIDENCE; INCLUDING, CIGERETTE BUTTS, IT WAS EXPOSED TO THE COURT BY DAN OBEMIER AND DAN SMITH ( THAT THOSE SWABS WERE IN FACT DEFINITIVELY UNIDENTIFIABLE);** shields was denied the right to re-test (all) biological evidence

before his trial.

Plaintiffs claims for relief in this action began because of these facts:

That by the state refusing to release (all) biological evidence for dna re-testing **A). plaintiff has been deprived of due process of law; B). plaintiff has been deprived of the oppurtunity to make a conclusive showing showing that he is innocent of the crime for which he is incarcerated, in violation of the due process clause of the 14th amendment; C). plaintiff has been deprived of the oppurtunity to make a conclusive showing of actual innocence in violation of the crule and unusual punishment clause of the 8th amendment; D). plaintiff has been deprived of his right to present evidence of innocence in state court, in violation of the confrontation and compulsory process clause of the 6th amendment; E). plaintiff has been deprived of the oppurtunity to effectively litigate his claim that he is innocent of the crime for which he is currently incarcerated, thereby preventing plaintiff from access to the state and federal courts to obtain relief, in violation of the due process and equal protection guarantees of the 14th amendment and F). plaintiff has been denied of his right to avial himself of the oppurtunity to apply for executive clemency and the function that executive clemency**

serves in preventing the violation of his constitutional rights that would arise from continued incarceration of an inmmate who can make an actual showing of innocence. plantiff shields contends that the touch dna re-testing of all items asked for in his 1st, 2cnd, and amended 21-2512 petition of all tangible that the state tested including butts; that testing  would exhonerate him because only the assailant could have left this dna material and if the dna does not match, he could not be the assailent.

RELIEF

_____

1). First shields asks this court to retian a copy of the full record and discovery including (all) transcripts of all hearings, the full discovery (including) the missing pages that were " intentionally" in bad faith taken out.

2). Second shields asks this court to order the state to produce the original electronic data; " the source code" that the ɯ ᴜ ɴᴅᴏɯ ᶴ  ⌐ ᴀɴ ᴏʀɪɢɪɴᴀʟ ᴇʟᴇᴄᴛʀᴏɴɪᴄ ᴅᴀᴛᴀ ᴅɪꜱᴄ ⅃ apple data came from. shields asks that he be given the right to retest the ( exact) same two sticks that barbra crim swanson stated under oath she done her analysis from. shields asks this court to order the state to produce ( the mirror) that the state said had one print on it belonging to mr shields, shields asks that the mirror be produced so that touch dna testing can be ran on the print. shields asks this court to order the state to produce every single item shields asked for in his 1st,2cnd, and amended motions for post-conviction 21-2512 petition for post dna testing. ( shields has never) been allowed to re-test (no items) before his trial; the state never turned over any of those tangible items to GENETIC TECHNOLOGIES for re-testing before his trial; the ( original electronic disc),  (all)  tangible items were( never produced) before his trial.  NOT A SINGLE CIGERETTE BUTT, NOT A CYRO TUBE, NOT A COTTON SWAB, NOT A PANTY CUTTING, NOTHING AT ALL.

3). Third , shields asks this court to hire and select a team of investigators to inspect the claims that shields is alleging in this osborne claim.

4). fourth, shields asks that after a investigation into this osborne claim by investigators and it becomes verified through thier report that shields allegations in this claim ( are in fact true). then shields asks that he be compensated by the CITY OF KANSAS CITY KANSAS, IN THE AMOUNT OF 100.00 MILLION DOLLARS, AND THE DISTRICT ATTORNEYS OFFICE, AND THAT EACH INDIVIDUAL, MARK DUPREE, AND JENNIFER TATUM, AND DANIEL OBEMIER AND DAVID SMITH ,  who knowingly participated in denying shields his 4th, 5th, 6th, 8th, 14th amendment rights, his constitutional rights and his civil rights and 10 to the bill of rights,  violating his "procedural", " substantive due process rights" and his civil rights by denying him access to that same evidence that the state used against him at his trial  WITH THE INTENT TO FRAME HIM FOR MURDER,

6

That he be compensated in the amount of 100.00 million dollars from the city of kansas city kansas; 50 mollion dollars from the district attorneys office, and 10 million dollars from each from every individual prosecutor on the case who **(knowingly)** participated in the denial of those rights. the denial of that right caused shields the injury of a conviction; that conviction came with 2 life sentences.

5).fifth, shields asks that (all) participants (assests) and or (estates) be frozen until negotiations are completed at to how shields is gonna recieve payments because of the denial of his right to that evidence.

**2). second; shields raises an (ARMSTRONG CLAIM); armstrong v. daily, 786 f.3d 529. as in armstrong;**

Shields claims that head district attorney MARK DUPREE, prosecutor JENNIFER TATUM, prosecutor DAN OBEMIER, GARY DIRKS of (JCCL), VALLERY FORNOW of (JCCL), JAMES NEW MAN of the KBI, BARBRA CRIM SWANSON of the KBI, the KCPD, and (all) lab technicians who touched these dna samples and consumed them; **deprived shields of his liberty without due process of law by intentionally destroying (exculpatory) biological dna evidence "in bad faith" to frame shields for murder.**

**BAD FAITH MEANS THE CONCONSCIOUS DOING OF A WRONG BECAUSE OF A DISHONEST PURPOSE OR MORAL OBLIQUITY; IT IS DIFFERENT FROM THE NEGATIVE IDEA OF NEGLIGENCE IN THAT IT CONTEMPLATES A STATE OF MIND AFFIRMATIVELY OPERATING WITH FURTIVE DESIGN OR ILL WILL.**

**(HN5)** citing armstrong; fundamental rights, "procedural due process" rights were violated. the right to to not have exculpatory evidence deliberately destroyed stems directly from the right to disclosure of exculpatory evience identified in brady v. maryland which was itself an extension of mooney v. holohan. these rights are all grounded in the due process guarantee of fundamental fairness in criminal prosecutions. a criminal defendants right not to have exculpatory evidence destroyed deliberately, like other fundamental fairness rights of criminal defendants, safe guards the liberty of the citizen against deprevation through the action of the state and cannot be deemed to be satisfied by mere notice and hearing.

**(HN6)** civil rights law>protection of rights> section 1983 actions>

The fact that a public official violates state law does not mean that federal law was not also violated.

In shields case vallery fornow of (JCCL) participated in the conspiracy to frame shields for murder by intentionally giong into the laboratory freezer and **" in bad faith"** destroyed the exculpatory biological evidence that proved mr shields innocence, then mixed up the tubes and the contents of tubes 0464 and 0551. the discovery exposes exactly what she did. after she touched the tubes **THE COTTON SWABS WENT FROM THE BOTTOM OF THE TUBE UNDER 4 OTHER CASES WITH BIOLOGICAL EVIDENCE FLOATING UNDER THE SEPERATORS UNDER THE COTTON (WHICH) WAS IN FACT BLOOD FROM THE 0464 TUBE; TO THE VERY TOP OF THE TUBE WHEN IT WAS OBTAINED FROM ANOTHER LAB. SHE WAS FIRED BUT THE DAMAGE WAS ALREADY DONE.** the proof is in the record and the (full) discovery.

shields argues that in the armstrong v. daily claim; the court affirmed the district courts decision to allow both claims to proceed for these reasons; (first) 1. plaintiffs federal due process claims against (all) defendants based on the destruction or loss of exculpatory evidence are not barred by the availability of state tort remidies for the same wrongs. the doctrine of parrat v. taylor451 u.s 527, 101. ct. 1908, 68 l ed 2d 420 (1981), does not apply to the actions of law enforcement officers

that undermine the fairness of a criminal trial.

**(second) 2.** at the time of the original investigation, it was clearly established under Killian v. United States, 368 U.S 231 82, S.ct 302 7 led 2d 256 (1961), and then brady v. maryland, 373 U.S 83 S.ct 1194 10 led 2d 215 (1963), **that bad faith destruction or loss of exculpatory evidence would violate a suspects due process right. brady made clear that the police and prosecutor could not suppress exculpatory evidence. a reasonable police officer or prosecutor would not have concluded that he could instead destroy evidence to avoid disclosing it to the defense.**

**(third) 3.** if plaintiff can show that the unconstitutional destruction of exculpatory evidence in 2006 caused him to suffer a deprivation of liberty, (HE CAN SUE FOR THAT INJURY) WITHOUT HAVING GONE THROUGH A SECOND TRIAL.

Finally, while there is some disagreement among courts about the conditions for obtaining a civil remedy for destruction of exculpatory evidence, the disagreements do not support a qualified immunity defense. it was clearly established in (2006) that the alleged conduct of destroying the evidence would violate defendants due process rights.

Shields claims that **Vallery Fornow of (JCCL) JHONSON COUNTY CRIMINAL LABORATORY did (knowingly) and (intentionally) " in bad faith" ( KNOWING BEFOREHAND) that those items were exculpatory and (could possibly exhonerate mr.shields). Vallery Fornow (being in collusion with) barbra crim swanson , gary dirks , james newman, both detectives terry mast and "others" MARK DUPREE, DAN OBEMIER, DAVID SMITH, after she was told she would be fired because of it; she still went into that freezer and destroyed biological evidence that was favorable to mr shields through malice with the plan to decieve the court with a deliberate indifference to mr shields due process rights.**

Shields constitutional and his civil rights were violated because of the (JCCL) laboratory and the (KCKPD). shields recieved the injury of 2 life sentences because of the intentional bad faith destruction of that evidence.

**SHIELDS ARGUES THAT (ALL)  PARTICIPANTS VIOLATED BOTH THE KANSAS SUPREME COURT RULE (108) (a) (1);**

**about reproduction and disposition of court records; the rule that governs  the retention, reproduction, disposition and destruction of court records. (COURT RECORDS) include ( ALL ORIGINAL COURT RECORDS), documents, and filings, including (ELECTRONIC TRANSMISSION).**

**AND PARTICIPANTS VIOLATED KANSAS STATUTE LAW K.S.A 60-60237 (e);**

failure to preserve electronically stored information. if electronically stored information that should have been preserved in the anticipation or conduct of litagation is lost because a party failed to take reasonable steps tp preserve it and it cannot be restored or replaced through additional discovery, the court:

1). upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

2). only upon finding that the party acted with the intent to deprive another party of the informations use in the litigation;

**( WHICH IS EXACTLY WHAT HAPPENED IN  SHIELDS CASE)**

may; (a). presume that the lost information was unfavorable for the party;

(b). instruct the jury that it may or must presume the information was unfavorable to the party; or

(c). dismiss the action or enter a default judgement.

**RELIEF FROM ARMSTRONG CLAIM:**

1). First, shields asks this court to retain a copy of the full record including (all) transcripts of all hearings;

**(specifically)** the deposition hearing of gary dirks of (JCCL) and the full discovery **(including the missing pages)** that

were **" intentionally"** in **bad faith** taken out.

2). second; shields asks this court to select a team of investigators to inspect the claims mentioned in this armstrong

claim. shields asks that these investigators question ALAN HAMB of (JCCL) laboratory, who was the head administrator of

that lab and **who testified for shields**; shields asks that gary dirks  be investigated as to his involvement in manufacturing

tube I-88-0464 with vallery fornow. shields asks that he be asked the question about how he warned vallery fornow **(not)**

to go into that freezer and intentionally destroy biological evidence that would exhonerate shields. shields asks that vallery

fornow be questioned about the part she played in destroying that evidence.

3). third; shields asks; that after the confirmation of shields claim of " **intentional bad faith consumption of dna samples",**

**and " intentional bad faith destruction of biological evidence"** at (JCCL) by vallery fornow; shields asks that the city of

OIATHE            ~~of~~ KANSAS award him damages for the (JCCL) lab in its city;  **for that lab and employees at that lab;** for

deliberately in bad faith destroying exculpatory evidence; in the amount of 100. million dollars,  **(FOR BAD FAITH**

**DESTRUCTION ALONE).**

4). fourth; shields asks that **(each chemist)** who touched this dna evidence; including gary dirks, and vallery fornow; **(any)**

and **(all)** who ( knowingly participated) in the destruction of that biological evidence in that freezer; that each individual

compensate mr shields in the amount of 10 million dollars.

5). fifth; shields asks that ( all assests) and the **(entity)** or **(estate)** of the **(JCCL) laboratory** or any assests or estates owned

9

**(by any and all these individuals)** be frozen until negotiatina are completed as to how and when shields will recieve his

reward for the damages caused him; which consisted of a conviction for first degree premeditated murder. that conviction

came with the injury of 2 life sentences.


**THIRD 3). SHIELDS RAISES A NAPPER CLAIM;** From the amended complaint of ex parte LAWRENCE JAMES NAPPER (DOC

NO.11). original case no; ap- 76-285 texas court of criminal appeals. [all Defendants violated shields 4t, 6th 5th and 14th amendment constitution Rights]

**As in napper, so also in shields case;** instead of the 4 tubes recieved by JOSEPH CHU, ( a chemist) of the HPD crime lab that

contained the face swabs; in shields case there are 2 tubes; **one tube labled** I-88 0556 which was the tube related to the

JOLENE and RAY murder case but was said to contain the 2 pieces of cotton swabs that had shields dna on them. the 0464

tube belonged to a aggrevated battery case. **As in the napper case tubes; so in the shields case;** the tube labled I-88-0464 that

VALLERY FORNOW of JHONSON COUNTY CRIMINAL LABORATORY said contained the two pieces of cotton that had shields

dna on them; **THOSE PIECES OF COTTON WERE LOCATED IN THE BOTTOM OF THE 0464 TUBE WITH 4 OR 5 CASES STACKED ON
TOP OF THAT COTTONL; THE SEPERATORS THAT SEPERATE EACH CASE WERE BREACHED AND THERE WAS FOUND
BIOLOGICAL DNA EVIDENCE FLOATING UP UNDER THE BOTTOM OF THOSE COTTON SWABS.**


**As in the napper case; so also in the shields case, ( the swabs were also contaminated).** Shields case also contained mixed
samples as in napper. In shields case the exact same thing transpired as in the napper case; **THE (KCPD) CHEMIST, VALLERY**

**FORNOW OF (JCCL) OR BARBRA CRIM SWANSON OF THE (KBI) OR SOME OTHER ANALYST WHO THE STATE HAS ALSO**

**( CONCEALED AND HID) , ALL ANALYSTS WHO BARBRA CRIM SWANSON STATED UNDER OATH THAT THEY CAME FROM ALL**

**OVER AND TOUCHED THIOS EVIDENCE; ( NONE OF THESE ANALYSTS WERE EVER REVEALED TO THE COURT); BUT THEY HAD**

**DONE WHAT JOSEPH CHU OF THE ( HPD) LAB HAD DONE; ( THEY HAD CONSUMED THE ENTIRE DNA SAMPLE IN SHIELDS**

**CASE ) WITHOUT NOTIFYING THE KANSAS CITY KANSAS DISTRICT ATTORNEYS OFFICE THAT THEY WERE GOING TO DO SO;**

thereby violating mr shields constitutional rights by denying him access to those samples.

As in napper; shields defense attorney also filed a motion for independent analysis which included a request to hire a defense
dna expert. the motion was granted; **THE DIFFERENCE IN SHIELDS CASE IS THE PROSECUTION NEVER HAD A OPEN FILE POLICY;**

**IN SHIELDS CASE THE STATE (NEVER) TURNED OVER TO THE INDEPENDANT LAB ( THE ACTUAL CYRO TUBE 0464) THAT THE**

**STATE SAID HAD THE TWO PIECES OF COTTON IN AND THE PANTY CUTTINGS OF JOLENES PANTIES.**

In the napper case, defendant BARKER did the exact same thing that BARBRA CRIM SWANSON, VALLERY FORNOW, THE KCPD

and any chemist declared; that **(CIGERETTE BUTTS)** found outside the crime scene was identified as containing plaintiffs

dna profile.

In shields case, shields claims no testing was ever performed on the butts mentioned **( because no actual butts were ever**

produced at his trial nor were any butts ever turned over to GENETIC TECHNOLOGIES for an idependant lab re-test, shields

claims that the mention of butts was just another aspect of the frame up for shields conviction. ( NO BUTTS WERE EVER

PRODUCED} violating shields constitutional procedural due process rights.


As in the napper case; so also in the shields case, barbra crim swanson also falsely claimed;  (like BARKER falsely claimed) in

the napper case, that she performed the testing on the panties the cigerette butts and other items of evidence but hse had

not. As in the napper case; so also in the shields case; barbra crim swanson did exactly what barker did in the napper case;

barbra crim swanson (intentionally) misled the jury by giving unsolicited testimony about the dna analysis that( she )conducted

but she had not.

As barker in the napper case; BARBRA CRIM SWANSON made specific claims about the type of dna testing that was allegedly

conducted where as paul dent during questioning at a pre trial hearing only called for a yes or no answer.

( THE STATE NEVER COMPLIED WITH THE PRODUCTION ORDER OF THE COURT} and denied shields access to the actual swabs

for re-testing; " SIMPLY BECAUSE THEY WANTED TO FRAME SHIELDS FOR MURDER  BY ANY MEANS NECESSARY".


In the shields case THE STATE NEVER PRODUCED THE " ORIGINAL ELECTRONIC DATA DISC". The state by JAMES NEWMAN of

the KBI committed perjury on the stand by stating per record that the kbi didnt have a protocol for keeping the original elec-

tronic data disc;  BARBRA CRIM SWANSON  also of the kbi committed perjury on the stand by stating that the kbi also didnt

have a protocol for keeping extraction worksheets as well.

In the napper case the habeas record also contains documents from the (FBI) and the (NRC} regarding standards for dna testing,

and the NATIONAL RESEARCH COUNSILS recomendations.

 THE BOTTOM LINE IS; IN SHIELDS CASE SHIELDS CONTENDS IN HIS NAPPER CLAIM THAT "ET. ALL " (ALL) MEMBERS OF THE

STATES TEAM THROUGH MALICE AND DELIBERATE INTENT TO DEPRIVE MR. SHIELDS OF HIS CONSTITUTIONAL DUE PROCESS

RIGHTS; THOSE RIGHTS BEING "PROCEDURAL", "SUBSTANTIVE", AND "CIVIL"; WITH THE DELIBERATE INDIFFERENCE TO

THOSE

RIGHTS. THE STATE SET OUT TO FRAME SHIELDS FOR MURDER BY ANY MEANS NECESSARY.


The shields case goes way behond the incidents that transpired in the napper case; according to the record in shields case,

and through a portion of the discovery information that actually was provided; BECAUSE FULL DISCOVERY (WAS NOT)

PROVIDED IN SHIELDS CASE ; but through what was provided in the record the material facts in his claim are clearly obvious

and blatantly clear; THAT THE CITY OF KANSA CITY KANSAS THROUGH ITS DISTRICT ATTORNETS OFFICE ( AND  ALL) MEMBERS

OF ITS STATES TEAM; WHICH THE RECORD WILL REFLECT (ALL) PLAYED A CLEAR ROLE IN SHIELDS CASE THROUGH COLLUSION

OR OTHERWISE TO KNOWINGLY PARTICIPATE IN FRAMING SHIELDS FOR MURDER BY ANY MEANES NECESSARY. THOSE MEANS ARE OBVIOUS IN SHIELDS CASE. In the napper case JOSEPH CHU and CHILDS HENRY; "chemists", intentionally, recklessly, ( and in bad faith) consumed and destroyed available evidence. In shields case; th̶e̶ ̶K̶C̶K̶P̶D̶   VALLERY FORNOW of the JOHNSON COUNTY CRIMINAL LABORATORY (JCCL), GARY DIRKS, of (JCCL), BARBRA CRIM SWANSON of the (KBI), plus analysts from all over that came to the (KBI) to work with BARBRA CRIM SWANSON, ( they all) with deliberate indifference to MR SHIELDS civil and constitutional rights not only intentionally , recklessly, **and in bad faith (consumed), and (destroyed)** available evidence.

IN SHIELDS CASE THEY WENT BEHOND THAT TO FRAME SHIELDS; FIRST) THE̶Y̶ ̶K̶C̶K̶P̶D̶ (CONSUMED) ALL DNA SAMPLES, THEN AFTER THEY DID THAT; THE RECORD WILL REFLECT THAT GARY DIRKS (SWITCHED THE TUBES) AFTER HE KNEW THAT THERE WAS NO SAMPLE LEFT BECAUSE THE KCPD HAD CONSUMED IT ALL. THE RECORD SHOWS THE CONSPIRACY PLOT BECAUSE OF THE WAY THE SAMPLES WERE HANDELED; THE RECORD SHOWS THROUGH THE COMMUNICATION NOTES ( THAT DAN OBEMIER TRIED TO HIDE FOR 4 YEARS) ALL THE WAY UP UNTIL 3 DAYS BEFORE SHIELDS FIRST TRIAL DATE; THOSE NOTES REVEALED ( THE INTERNAL COMMUNICATIONS FROM THE (JCCL) OFFICE CONCERNING ITEMS IT RECIEVED FROM THE KCKPD IN 1988.

Subsequently items were transferred to ̶t̶h̶e̶ ̶KCKPD in 2002 to be sent to KBI for testing. the notes and internal communications reveal that the samples which were sent to the KBI for analysis **were mislabled and mixed up with another case and ( THE SWABS THAT WERE SAID TO CONTAIN SHIELDS DNA " IN FACT WERE ACTUALLY DEFINITIVELY UNIDENTIFIABLE",** thus calling into question the reliabilty of the evidence and subsequent dna testing of the items.

on page (31) of those communication notes a question was asked: why cant we locate the panty and or vaginal sample? I think i found them in cyro tube labled l-88-0464. may need gary dirks to verify. **THE ACTUAL CASE NUMBER WAS L-88-0551 NOT L-88-0464.**

The notes reveal the conspiracy: on page 33 of those 57 pages of notes **THAT WERE MISSING ALL THE WAY UP UNTIL 3 DAYS BEFORE PETITIONERS FIRST TRIAL DATE.** notes say that samples were located with the aid of inventory recieved from VALLERY FORNOW, cyro tube labled 0464.

SHIELDS CLAIMS THAT GARY DIRKS AND VALLERY FORNOW INTENTIONALLY, DELIBERATELY ( IN BAD FAITH) "MANUFACTURED" THIS TUBE; THEY BOTH KNEW ALREADY THAT THERE WASNT ANY SAMPLES LEFT; SO THEY PLACED (TWO) LOOK ALIKE PIECES OF COTTON IN THE BOTTOM OF A TUBE ( THAT THEY MANUFACTURED), THEN PLACED A SEPORATOR ON TOP OF THOSE ( FABRICATED PIECES) THEN THEY PLACED A SEPORATOR ON TOP OF THAT; THEY DID THAT UNTIL 5 CASES WERE STACKED ON TOP OF THOSE ( MANUFACTURED) AND ( FABRICATED) COTTON SWABS.

Page 35 of those notes reveal that after gary dirks and vallery fornow manufactured and fabricated that evidence and tube;

they then said that the items found in a freezer storage tube. BUT IT BECAME OBVIOUS THAT A CONSIPIRACY HAD TRANSPIRED BECAUSE (ALSO) ON PAGE 35 IT STATES CLEARLY THAT (2 SWABS) WERE FOUND ON (TOP) OF THOSE OTHER

CASES AND THOSE (2) FOUND ON TOP( WERE NOT LEGIBLE). THERE IS NO EXPLANATION OTHER THAN A CONSPIRACY TO EXPLAIN HOW DID ( 2 SWABS) THAT BARBRA CRIM SWANSON SAID UNDER OATH DID NOT NO LONGER EXIST BECAUSE THE

KCKPD OR THE (JCCL) LAB HAD CONSUMED IT ALL; so where did the swabs come from that vallery fornow located?

On page 40 it was said that samples included swabs from the rape kit and the victims panties (yellow). then it was stated

clearly THAT THE SWABS , DUE TO THE WAY THEY WERE STORED ( COULD NOT BE DEFINITIVELY IDENTIFIED) THEY CON-

TAINED NO LABLE AS BELONGING TO MR SHIELDS AND (NO SEPERATOR). The (jccl) could not positively identify the swabs as being the ones connected to the jones/ray case.

On page 42 of those notes; the meeting where the conspiracy plot began was scheduled between the WYCO DISTRICT ATTORNEY, KCPD DETECTIVES, BARBRA CRIM SWANSON, GARY DIRKS, ALAN HAMBTHE (JCCL) ADMINISTRATOR, JAMES NEWMAN OF THE KBI.

On page 43 of those missing pages reveal that the meeting was held. shields placed the court on notice through multiple prose motions THAT THE STATE MANUFACTURED AND FABRICATED EVIDENCE IN HIS CASE; GARY DIRKS shifted all the blame to vall-

ery fornow after GARY DIRKS through the collusion of DAN OBEMIER or others was forced to testify at a deposition hearing

after the district attorneys DAN OBEMIER andDAVID SMITH told the and the defense 3 DAYS BEFORE TRIAL; THAT THE RAPE

KIT SWABS THAT ARE BEING PRESENTED AT HIS TRIAL ARE ( DEFINITIVELY UNIDENTIFIABLE) AND UNLEGIBLE AS BELONGING TO MR. SHIELDS. Per record  the material fact is judge jennifer myers stated to the prosecution that she could not send shields

to trial in 3 days with this evidence; that the only evidence you have in this case is dna if you have no dna you have no case.

She stated that she can only do 2 things dismiss the case or order a deposition hearing with gary dirks. she ordered the deposition hearing.

AT THE DEPOSITION HEARING GARY DIRKS REVEALED TO THE COURT THAT VALLERY FORNOW (INTENTIONALL) AND IN BAD

FAITH ( KNOWING THAT THE EVIDENCE WAS EXCULPATORY AND FAVORABLE TO SHIELDS; AFTER BEING WARNED BY GARY

DIRKS THAT THE SWITCHING , FABRICATION AND MANUFACTURING OF ANOTHER TUBE WAS ENOUGH; HE WARNED VALLERY FORNOW THAT SHE WOULD BE FIRED IF SHE WENT BACK AGAIN INTO THAT FREEZER AND DESTROYED ( ALL) OTHER

EVIDENCE IN THAT FREEZER THAT WAS FAVORABLE TO MR SHIELDS. VALLERY FORNOW THROUGH COLLUSION WENT INTO THAT FREEZER AND INTENTIONALLY DESTROYED THE EVIDENCE ANYWAY MAKING (ALL) EVIDENCE FAVORABLE TO MR.

SHIELDS DISAPPEAR FROM THE LEADING OF THE DISTRICT ATTORNEY AND BARBRA CRIM SWANSON OF THE KBI AND ALL OTHERS WHO CONSPIRED TOGETHER AT THAT MEETING.  VALLERY FORNOW WAS FIRED BECAUSE OF IT.

In shields case; it is very clear and obvious that the state had help from all sides TO FRAME SHIELDS FOR THESE MURDERS.

The record and discovery clearly show that;

1). The state never complied with the production order, the defense was (never) allowed to inspect through his independ-ant lab;( THE ORIGINAL ELECTRONIC DATA DISC); IT WAS (NEVER) PROVIDED BY THE STATE. The kbi stated by JAMES NEW MAN

that the KBI didnt have a protocol for maintaining the ( **ORIGINAL ELECTRONIC DISC),** so it will never be provided; thereby

violating shields 4th,5th,6th 8th, and 14th amendment rights, his substantive due process rights and his civil rights.

KANSAS

**THE STATE VIOLATED SUPREME COURT RULE 108 (1) (A). AND K.S.A 60-237 (E).**

2). the state **NEVER PRODUCED THE ORIGINAL EXTRACTION WORKSHEETS** that jamie harmon of genetic technologies told the prosecution ( **are required); BARBRA CRIM SWANSON TESTIFIED THAT THE (KBI) ALSO DIDNT HAVE A PROTOCOL FOR KEEP-**

KANSAS

**ING EXTRACTION WORKSHEETS AS WELL.** violating SUPREME COURT RULE (108) (1) (A) and K.S.A 60-237 (E).

3). The state through VALLERY FORNOW intentionally in bad faith destroyed biological evidence, recklessly through collusion

with the malicious intent to frame shields for murder. **violating his procedural, substantive, constitutional and his civil rights; denying him access to all that evidence before his trial.**

4). that the state through the kcpd, JCCL, and other analysts, **( IN BAD FAITH) INTENTIONALLY CONSUMED ALL DNA SAMPLES IN SHIELDS CASE WITHOUT NOTIFICATION TO THE DISTRICT AYYORNEYS OFFICE.** violating his procedural due process rights

substantive due process rights and his civil rights. violating SUPREME COURT rule (108), and K.S.A 60-237(E); DENIED SHIELDS RIGHTS TO THAT EVIDENCE BEFORE HIS TRIAL TO PROVE HIS INNOCENCE.

5). The state **(never)** produced the mirror that the state said had one single print on it belonging to mr. shields; that evidence

was never sent to GENETIC TECHNOLOGIES to compare it through touch dna analysis. **violating shields 4th,5th,6th,8th, and 14th amendment due process rights, violating kansas statute disclosure law 22-3212 and rule.**

6). the state**(never)** produced the **(8) cigerette butts that the state said had shields dna on it.** violating disclosure law K.S.A

22-32 12, AND BRADY V. MARYLAND; FAILURE TO COMPLY LAWS. 4th,5th,6th,8th and 14th amendment rights. 10 to the bill of rights, civil and constitutional.

7).**( ALL) TANGIBLE ITEMS THAT WERE SAID TO CONTAIN SHIELDS DNA WERE (NEVER PRODUCED) BY THE STATE AFTER A**

**ORDER FROM THE COURT WAS ISSUED FOR THEM TO DO SO. ( THE STATE NEVER COMPLIED WITH THAT PRODUCTION**

**ORDER ) AND NO SANCTIONS WERE ISSUED OUT WHEN THEY DID NOT COMPLY EVEN WITH THE COURTS ORDER, violating**

**brady; disclosure rules, procedural, and substantive due process rights, civil rights, 4th,5th,6th,8th,14th amendment rights.**

In the NAPPER case the habeas court concluded that; the cort said that showing bad faith requires establishing that "**law**

**enforcement officials were actually aware thier action or inaction would result in the loss of what (they) recognized would**

**be evidence.** the court concluded that lab workers acted in bad faith. the court also pointed to the FBI and NRC standards

that call for retaining a portion of dna evidence for re-testing, if possible, next the court in the napper claimstated that where there is danger of evidence being consumed in testing... for a forensic lab to alert the prosecutor, who may then alert both

the defense counsel and the trial court.... **( AND OBTAIN AN ACKNOWLEDGEMENT SIGNED BY ALL PARTIES THAT CONSUMPTION OF THE EVIDENCE MAY OCCUR.** as an example, the court cited appendix 4 as showing how this practice was

followed by the ORCHID CELLMARK LAB during the instant habeas proceeding.

As in the NAPPER case; shields asks this court, if accurate testing was not possible at the KCPD,JCCL lab, then how were they

able to obtain a full dna profile from such evidence? applicant shields contends that the state cannot dismiss or deny the re-testing of (all)tangible biological evidence that right now is in posseion of the state of KANSAS.

In the NAPPER case; the habeas court found that; **BAD FAITH ENTAILS SOME SORT OF IMPROPER MOTIVE LIKE SHIELDS IS CLAIMING HAPPENED( BEFORE HE WAS EVER CHARGED); SUCH AS PERSONAL ANIMUS AGAINST SHIELDS OR A DESIRE TO PREVENT SHIELDS FROM (EVER OBTAINING) EVIDENCE THAT MIGHT BE FAVORABLE OR USEFUL TO MR. SHIELDS.**

The difference in shields claim from the NAPPER claim is;  **The record in shields proves that  VALLERY FORNOW of the (JCCL)**

**lab JHONSON COUNTY CRIMINAL LABORATORY, NOT ONLY WENT INTO THE FREEZER AT (JCCL) AND INTENTIONALLY IN " BAD FAITH" THROUGH A IMPROPER MOTIVE AFTER BEING WARNED THAT SHE WOULD BE FIRED IF SHE DID IT; SHE STILL**

**DESTROYED (ALL) BIOLOGICAL EVIDENCE THAT WAS HELD IN THAT FREEZER; SHE ALSO THEN PARTICIPATED WITH GARY DIRKS TO ( MANUFACTURE) AND (FABRICATE) A WHOLE DIFFERENT TUBE; THIS WAS DELIBERATELY DONE AS THE RECORD**

**WILL REFLECT IN SHIELDS CASE.** In shields case the record and full discovery willshow this court that; there is a very clear

recognition that **(concealment)** of the truth about what really happened with this dna evidence in shields case,;

**SHIELDS ARGUES THAT ( CONCEALMENT) ALONE ( IS THE METHOD) OF PROVING THAT THE EXCULPATORY VALUE OF THE**

**EVIDENCE( WAS KNOWN) TO THE DISTRICT ATTORNEY, THE KCKPD, GARY DIRKS, VALLERY FORNOW OF THE JCCL LAB,**

**DETECTIVES TERRY MAST AND OTHERS, BARBRA CRIM SWANSON, AND JAMES NEWMAN OF THE KBI, ( PRIOR TO ITS**

**DESTRUCTION.**


**PROSECUTORS (CONCEALED EVERY WAY) IN WHICH THAT DNA EVIDENCE COULD BE EXAMINED OR INSPECTED.**

Shields qoutes in his claim the same statement quoted by YOUNGBLOOD; that its standard was directed from those cases in which the police themselves or ( any member of the states team);  ( by thier conduct) indicated that the destroyed evidence could form a basis for exhonerating the defendant.

**RELIEF**

_____

Shields asks for relief in this NAPPER claim in this form;

1). first , shields  asks that this court retain the full record including (all) 42 pro se motions filed; including memorandums

filed pro se with 22 exhibits, and **(all) missing pages of discovery**, including all transcripts from pre-trial hearings and the

deposition hearing of gary dirks where vallery fornow became exposed. shields asks **( specifically)** for the court to retain

**THE NOTIFICATION LETTER FROM THE JCCL LAB; INFORMING THE COURT AND THE DISTRICT ATTORNEYS OFFICE THAT THEY**

**WERE GOING TO (CONSUME ALL) DNA SAMPLES;** shields asks this court **( TO ALSO OBTAIN THE ACKNOWLEDGEMENT LETTER**

**SIGNED BY ALL THREE PARTIES); THE COURT, THE DA, AND THE DEFENSE THAT THEY WERE GOING TO CONSUME (ALL)**

**SAMPLES.**

2). Second; Shields asks that this court would immeadiately recomend a private investigator to be assigned to the investigation

of VALLERY FORNOW, GARY DIRKS, AND ALAN HAMB of JCCL JHONSON COUNTY CRIMINAL LABORATORY; to verify the record

and discovery information that was actually provided by the state, and to verify that the allegations raised in his claim are in

fact true and actually happened.  **THAT TUBE L-88-0464 WAS MANUFACTURED. THAT THE SWABS WERE IN FACT DEFINITIVELY**

**UNIDENTIFIABLE AS STATED IN THE RECORD AND IN THE DISCOVERY RECORDS.**


3). Third ; After the investigation; and the investigation report verifys that VALLERY FORNOW **did exactly as shields stated in his**

**allegations; AND THA THE KCKPD AND ITS CRIME LAB; THE KBI , OR (JCCL) " IN BAD FAITH" CONSUMED ALL (DNA) SAMPLES**

**(WITHOUT) NOTIFICATION AND A SIGNED AGREEMENT FROM ALL THREE PARTIES;** Shields asks that each agency **THE KCKPD,**

**THE KBI, AND THE (JCCL) LAB** all compensate him in the amount of 200 million dollars each **( FOR BAD FAITH CONSUMPTION**

**OF DNA SAMPLES ALONE.** Shields asks that the city of OLATHE        KANSAS,  award him in the amount of 100 million

dollars for its criminal laboratorys involvement in the hiring of  VALLERY FORNOW  and GARY DIRKS and for that lab specifically

placing VALLERY FORNOW and GARY DIRKS on shilelds case **TO MANUFACTURE, FABRICATE, AND DESTROY EXCULPATORY**

**EVIDENCE IN SHIELDS CASE, TO FRAME SHIELDS FOR MURDER.** Shields asks that each chemist who touched (any) biological

evidence in shields case including (all) data; and (all) worksheets; shields asks that each chemist compensate him 5 million

dollars. shields asks this court to freeze (all) estates, and each ( entity) and (assets) of all agencies, and individuals until a signed

contract has been signed by mr. shields as to how and when payments will be initiated to mr shields.


4). fourth; Shields asks this court **( TO OBTAIN THE ACTUAL PROTOCOL) FROM THE (FBI); (KBI) CONCERNING PRESERVATION**

**OF ELECTRONIC DATA DISC AND ALSO THE (NRCS) NATIONAL RESEARCH COUNCILS STANDARDS TO VERIFY THE PERJURY**

COMMITTED ON THE STAND BY BARNRA CRIM SWANSON OF THE KBI AND JAMES NEWMAN OF THE KBI; BOTH OF THEM DID

TESTIFY UNDER OATH. BOTH SAID THE KBI DID NOT HAVE A STANDARD OR PROTOCOL FOR MAINTAINING THE ORIGINAL

ELECTRONIC DATA AND EXTRACTION WORKSHEETS.

Fifth (5). Shields asks the court to order the prosecution to produce not only (all) the biological evidence asked for in the order

of production; shields also asks the court to enter an injuction to the prosecution to produce every item asked for in shields

second post-conviction 21-2512 petition for new touch dna testing to be ran on every single (new) item in shields case that

has never been tested; that all items be re-tested using the new touch dna technique so that shields can prove to this court that

the state had never found shields dna on any of these items; **that those chemists in NAPPER case and analysts did exactly**

**what also JAMES NEWMAN also done in shields case; BY CHANGING ELECTRONIC COMPUTER DATA WITH HIS PEN; THAT**

**THEY HAVE CHANGED INCONCLUSIVE RESULTS TO CONCLUSIVE.**

SIXTH(6). Shields asks for the relief because the state intentionally " in bad faith" destroyed exculpatory biological evidence

in his case by VALLERY FORNOW at (JCCL); she was coerced into doing it by { district attorney},( BARBRA CRIM SWANSON),

of the (KBI), the (KCKPD), detectives TERRY MAST and others. The state through the KCKPD, the KBI, the JCCL LAB, GARY DIRKS

and others that BARBRA CRIM SWANSON testified under oath and said threy came from all over and touched this evidence.

**THE STATE HAS CONSUMED ALL THE DNA SAMPLE WITHOUT NOTIFYING THE KCK DISTRICT ATTORNEYS OFFICE AND THE**

**DEFENCE; ( AND RECIEVING A SIGNED ACKNOWLEDGEMENT FROM ALL PARTIES THAT THEY WERE GOING TO DO SO. THE Y**

**(ALL)**

**ACTED WITH A DELIBERATE INDIFFERENCE TO SHIELDS RIGHTS; THEY (ALL) WERE MOTIVATED THROUGH ( MALICE), THEY**

**MOVED WITH THE DELIBERATE INTENTION TO OBSTRUCT JUSTICE.** shields asks to be compensated for that; **FOR NO**

**NOTIFICATION OF CONSUMPTION OF DNA SAMPLES; FOR BLATANT INTENTIONAL DESTRUCTION OF (ALL) BIOLOGICAL**

**EXCULPATORY EVIDENCE LOCATED IN FREEZER AT (JCCL) BY VALLERY FORNOW; FOR MANUFATURING "FAKE" COTTON**

**SWABS; FOR FABRICATING EVIDENCE ( THE L-88-0464 CYRO TUBE); FOR CHANGING INCONCLUSIVE  DNA DATA**

**INFORMATION FROM INCONCLUSIVE TO CONCLUSIVE; FOR TAMPERING WITH EVIDENCE; FOR FALSIFIED INFORMATION;**

**FOR VIOLATING; KANSAS SUPREME COURT RULE (108) (1) (A), AND FOR VIOLATING KANSAS STATUTE LAW 60-237 (E).**


(FOURTH CLAIM) 4). SHIELDS RAISES A YOUNGBLOOD  CLAIM; state v. YOUNGBLOOD; 153 ariz. 50 (1986) ARIZ. COURT OF

APPEALS: claiming that His 14th AMENDMENT; "PROCEDURAL DUE PROCESS" RIGHTS, His "SUBSTANTIVE DUE PROCESS" Rights and His "CIVIL" Rights to the FEDERAL CONSTITUTION HAVE BEEN VIOLATED.

Shields contends in his claim that (HN1) citing younblood; The united states supreme court has held that the due process

clause of the 14th amendment requires that criminal defendants be afforded a meaningful oppurtunity to present a complete

defense. this imposes a constitutional duty on the prosecution to turn over exculpatory evidence that would raise a reasonable

doubt about the defendants guilt. such evidence is considered material if its exculpatory value was apparent before the

evidence was destroyed and is of such a nature that the defendant would be unable to obtain comparable evidence by other

reasonably available means.

(HN3) citing young blood;> preservation of relevant evidence, exclusion and preserevation by prosecutors; **a defendant must establish a reasonable probability that the destroyed evidence could have been of assistance to the defense.**

In shields case; DNA evidence was the only evidence in the case, there was no gun, no wittnesses of the crime and extremely circumstantial evidence in the case; Shields was convicted based completely upon a reasonable assumption in what is now a 33 year old cold case murder. The KCPD or other members of the states team intentionally consumed all of the dna samples without notification to the district attorneys office.

**SHIELDS WAS NEVER ALLOWED TO RE-TEST THE CONTENTS OF CYRO TUBE L-88-0464 THAT CONTAINED ( WHAT THEY SAID) WAS 2 COTTON SWABS, AND PANTY CUTTINGS FROM THE VICTIM.**

shields filed multiple pro se motions requesting access to re-test (all) biological evidence in the states possession before his trial.

His attorney PAUL DENT (coinsided) with the state **to deny him his 5th amendment right to test those items. Shields then asked for his recusal because of inneffective assistance for the attorney not adopting shields motin asking to test all biological evidence before his trial. all shields motions were denied.**

**THE PROSECUTION NEVER PRODUCED (ANY) OF THE BIOLOGICAL EVIDENCE IT HAD IN ITS POSSESSION TO (GENETIC TECHNOLOGIES) " JAMIE HARMON" SHIELDS PRIVATE LAB. THE PROSECUTION AFTER BEING ISSUED AN ORDER OF PRODUCTION FROM THE COURT IN WHICH (ALL) BIOLOGICAL EVIDENCE WAS REQUESTED; AND AFTER A 10 PAGE MOTION FOR DISCLOSURE AND DISCOVERY AND INSPECTION WAS FILED ASKING  FOR MORE BIOLOGICAL EVIDENCE THAT WAS MENTIONED IN THE ORDER OF PRODUCTION. THE  STATE PROSECUTORS ( NEVER COMPLIED) WITH ANY PRODUCTION ORDER OF THE COURT. NO SANCTION WAS EVER ISSUED TO THE STATE.   THE BOTTOM LINE IS; SHIELDS (NEVER) GIVEN ACCESS TO THAT EVIDENCE SO THAT HIS PRIVATE LAB COULD HAVE ETSTED IT BEFORE HIS TRIAL WHICH WOULD HAVEE EXHONERATED HIM.**

(HN4) citing Youngblood; states under. > preservation of relevant evidence> exclusion and preservation by prosecutors;

**That when identity is an issue at trial and the police permit the destruction of evidence that could eliminate a defendant as the perpetrator, such loss is material to the defense and  ( IS A DENIAL OF DUE PROCESS).**

In shields YOUNGBLOOD claim; shields is not asking for the dissmisal of his charges.

Shields is asking for the justifiable compensation from the KCKPD, the (JCCL) laboratory, THE CITY OF _____ ~', the

KBI, and each individual analysts who have intentionally destroyed (all) biological evidence in shields case by **VALLERY FORNOW, in bad faith;** and they also intentionally in bad faith consumed all of the dna sample denying shields his due

process rights to that evidence. CALIFORNIA V. TROMBETTA, 467 U.S 479, 484, 104 S.CT 2528,2532,81 L.ED 2D. 413,419 (1984)

[CITING].; such evidence is considered material if its exculpatory value was apparent before the evidence was destroyed and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

Shields claims that; 1). **That the chemists that worked for the KCKPD,(JCCL), BARBRA CRIM SWANSON OF THE (KBI), GARY DIRKS OF (JCCL), VALLERY FORNOW of (JCCL) through collusion, intentionally in bad faith destroyed biological evidence in shields case ( years before shields was charged); knowing that it was exculpatory evidence; with deliberate indifference to**

**shields due process rights.**

Shields claims that gary dirks of (JCCL) and VALLERY FORNOW had some how been brain washed after a group meeting that had been called together by the (KBI) BARBRA CRIM SWANSON, JAMES NEWMAN of the KBI, the KCKPD and its detectives TERRY

MAST and other detectives about ( HOW THEY CAN SHAPE THIS EVIDENCE) AND THEN MANUFACTURE AND FABRICATE OTHER EVIDENCE IN ORDER TO MAKE SURE THAT (ALL) EXCULPATORY EVIDENCE IN FAVOR OF SHIELDS ( NEVER) MAKES IT

TO TRIAL. Vallery fornow; after that meeting knowingly and she intentionally " in bad faith" after being warned by GARY DIRKS

against doing this, SHE INTENTIONALLY OPENED A BIOLOGICAL FREEZER THAT POSSESSED CRIMINAL EVIDENCE( FROM ALL

OVER); ( SHE SPECIFICALLY SOUGHT OUT EVIDENCE THAT PERTAINED TO THIS CASE) , " THAT SHE KNEW" TO BE EXCULPATO-RY AND BENIFICIAL TO THE DEFENDANT, ( AND SHE IBNTENTIONALLY DESTROYED THAT EVIDENCE IN BAD FAITH TO HELP THE DETECTIVES AND THE PROSECUTORS TO FRAME SHIELDS FOR MURDER.

2). (JCCL) laboratory through VALLERY FORNOW  violated shields constitutional " **procedural due process rights**" his

"**substantive due process rights**", and his "**civil rights**".

3). THOSE CONSTITUTIONAL RIGHTS WERE CLEARLY ESTABLISHED AT THE EXACT TIME OF THE DESTRUCTION OF EXCULPATORY AND EXHONERATING EVIDENCE.


**RELIEF**

———————————————————————

Shields asks for relief in his youngblood claim in this form;

(first) (1). Shields asks that this court retain the full record including all 42 pro se motions filed and (all) the missing pages of

discovery including all transcripts from pretrial hearings and THE DEPOSITION HEARING OF GARY DIRKS WHERE VALLERY

FORNOW BECAME EXPOSED, and all KBI exhibits.

(second) 2). Shields asks that this court would immeadiately recommend an invsetigator or team of investigators assigned to

investigate the (KCKPD); its detectives especially " DETECTIVE GOLUBSKI", VALLERY FORNOW of (JCCL), GARY DIRKS of JCCL;

JAMES NEWMAN of the KBI; BARBRA CRIM SWANSON of the KBI; ( every chemist) who barbra crim swanson mentioned who
touched biological evidence, to verify shields allegations in his youngblood claim.

(third) 3). shields asks that (all) members of the states team who played any part in the destruction (of any evidence) in his

case; Shields asks that the CITY OF KANSAS CITY KANSAS COMPENSATE HIM IN THE AMOUNT OF 100 MILLION DOLLARS;

FOR THE (KCKPD) COMPENSATE HIM IN THE AMOUNT OF 200 MILLION DOLLARS, FOR THE CITY OF OLATHE TO COMPENSATE

HIM IN THE AMOUNT OF 200 MILLION DOLLARS FOR (JCCL) LABORATORYS INVOLVEMENT IN THE DESTRUCTION OF ANY

BIOLOGICAL EVIDENCE IN HIS CASE. shields asks that the (entity)who also supported the destruction of (any) evidence in
shields case; shields asks to be compensated for being responsible for those working under them.

shields asks that all members of the states team who played a role in any part of the prosecution and conviction of mr. shields;

THAT (ALL) ESTATES OF SAID PARTICIPANTS BE FROZEN; THAT (ALL) ASSETS BE FROZEN OF ALL THESE INDIVIDUALS; (ALL)

RETIREMENT PAY; PENSIONS; UNTIL NEGOTIATIONS ARE COMPLETED IN REFERENCE TO PAYMENTS.

(fourth) 4). Shields asks that the KCKPD compensate him in the amount of 100 million dollars in damages (for witholding the

giglio information about DETECTIVE GOLUBSKI), AND ( FOR NOT PROVIDING NOTIFICATION TO THE DISTRICT ATTORNEY OR

THE DEFENSE THAT THE KCKPD WAS GOING TO CONSUME ALL DNA SAMPLES).

(fifth) 5). Shields asks this court to issue an order after verification; that the state produce to the defendant; the actual

"source code" to the windows computer software that the state used in its identity verification evidence and the" original

electronic disc" that was produced from that source code. shields asks for the same from the apple soft ware that the KBI
stated it switched to.

(sixth) 6).shields asks that his rights to (all) biological evidence that he asked for in 10 page moyion of discovery and inspection

; and also in the order of production that the state did not comply to; ( all itemized items ) asked for in his 1st petition for

post-conviction dna testing and his amendment to that 2cnd petition. shields asks that his rights be granted and (all)

evidence asked for be sent to the independant lab of shields choosing to (all) be re-tested using the NEW TOUCH DNA

TECHNIQUE.

(seventh) 7). Shields asks that all costs and fees be against the state.


(FIFTH) ; SHIELDS RAISES A ; BRYCE LEON DAVIS CLAIM; 266 KAN. 638

The prosecutors JENNIFER TATUM, DANIEL OBEMIER, DAVID SMITH, by and through head district attorney  MARK DUPREE,

Shields claims that his 4th, 5th, 6th, 8th, and 14th amendment constitutional rights were violated ; his "procedural due process" rights, his "substantive due process" rights were violated and his " civil " rights were violated by these individuals

(who all) denied him of his right to a fair trial by all thier actions.

These individuals are being sued in thier individual capacities for ( CONTEMPT OF COURT) , and MARK DUPREE for failure to

trian.  **THE CLAIM THAT SHIELDS IS RAISING [citing] ; state v. bryce leon davis,266 kan.638  is simple and clear cut.**

### DISCOVERY BY DEFENDANT, REPORTS OF EXAMINATIONS & TESTS

While the provisions of Kan. stat. ann. 22-3212 require the state to permit defense counsel to inspect, copy or photograph

such documents,kan.stat. ann. 22-3212 places in the trialcourt a broad discretion to require disclosure of documents ad other

tangeble objects which may be in the possesion or under the control of the prosecution.

**(Hn5) [citing] ;davis, kan. stat. ann. 22-3212, places broader  discovery within the discretion of the trial court and the KANSAS SUPREME COURT urges the trial courts to use these discretionary provisions to the effect economies in time, money, and judicial and professional talents, and to permit through preparation for trial on both sides. the intent of the code of criminal procedure is to be effected by prosecutors, trial courts, and defense attorneys construing its provisions to securr simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay.**

**(Hn8)[ citing]; davis,  TRIALS , CONTINUANCES,**

Kan. stat. ann. 22-3212 (g); **STATES THAT WHERE A PARTY FAILS TO COMPLY WITH THE DISCOVERY ORDER, THE COURT MAY ORDER SUCH PARTY TO PERMIT THE DISCOVERY OR INSPECTION OF MATERIALS NOT PREVIOUSLY DISCLOSED , GRANT A CONTINUANCE, OR PROHIBIT THE PARTY FROM INTRODUCING IN EVIDENCE THE MATERIAL NOT DISCLOSED, OR IT MAY ENTER SUCH OTHER ORDER AS IT DEEMS JUST UNDER THE CIRCUMSTANCES.**

**(Hn9)[citing];davis,                          CONTEMPT , CIVIL   CONTEMPT**

---

**PROCEEDINGSFOR CONTEMPT ARE OF TWO CLASSES, NAMELY, CRIMINAL, AND CIVIL. CRIMINAL CONTEMPT PROCEEDINGS ARE THOSE BROUGHT TO PRESERVE THE POWER AND VINDICATE THE DIGNITY OF THE COURTS AND TO PUNISH FOR DIS- OBEDIENCE OF ITS ORDERS. CIVIL CONTEMPT PROCEEDINGS ARE THOSE INSTITUTED TO PRESERVE AND ENFORCE THE RIGHTS OF PRIVATE PARTIES TO SUITS AND TO COMPEL OBEDIENCE TO ORDERS AND DECREES MADE FOR THE BENEFIT OF SUCH PARTIES . THE FORMER ARE CRIMINAL AND PUNITIVE IN THIER NATURE, AND THE GOVERNMENT, THE COURTS, AND THE PEOPLE ARE INTERESTED IN THIER PROSECUTION. THE LATER ARE CIVIL, REMEDIAL, COERCIVE IN THIER NATURE, AND THE PARTIES CHIEFLY INTERESTED IN THIER CONDUCT AND PROSECUTION ARE THOSE INDIVIDUALSFORTHEENFORCEMENTWHOSE**

private rights and remedies the suits were instituted.

(Hn11)[ citing] davis;                                    CIVIL    PROCEDURE,    SANCTIONS

the discretion afforded a trial is not unlimited. where there has been no showing that the defendant suffered actual prejudice as a result of " **prosecutors misconduct**" and alternative means of sanctioning the prosecutor exists for the violation, dissmissal of pending charges may constitute an abuse of discretion by the trial court.

H

(Hn13) [citing] davis;                        CIVIL PROCEEDURE, DISCOVERY & DISCLOSURE

A discovery order entered by the court is not to be taken lightly by a member of the bar. once an order has been made directing discovery, counsel has a continual obligation to see that its terms are carried out in utmost good faith.

(Hn 14) [citing] davis;                OBSTRUCTION OF ADMINISTRATION OF JUSTICE

" CONTEMPT"

KANSA LAW AUTHORIZES THE COURT TO TAKE ACTION AGAINST A PROSECUTOR PERSONALLY THROUGH ITS CONTEMPT POWER AS WELL AS REFERRING THE ATRORNEY TO THE OFFICE OF THE DISCIPLINARY ADMINISTRATOR FOR APPROPRIATE ACTION. IN EXTREME CASES WHERE COUNSEL PERSISTS IN A WILLFULL AND CONTEMPTOUS VILATION OF A VALIB COURT ORDER AND NO LESSER PUNISHMENT WILL VINDICATE THE COURTS DIGNITY AND AUTHORITY, A PUNITIVE JUDGEMENT MAY BE IMPOSED. ( A TRIAL JUDGE MUST CHOOSE) A SANCTION SUFFICIENTLY POTENT TO ACHIEVE THE GOALS OF RESTORING THE DIGNITY AND AUTHORITY OF THE COURT AND ONE THAT IS IN PROPORTION TO THE CONTEMPTOUS

CONDUCT. PUNISHMENT IN APPROPRIATE CASES MAY INCLUDE A SENTENCE TO CONFINEMENT. ANY SENTENCE IMPOSED MUST BE DETERMINATE AND MAY ALSO INCLUDE CONDITIONS TO ALLOW FOR EARLIER TERMINATION OF THE SENTENCE

UPON CERTIAN ACTIONS BEING TAKEN BY COUNSEL TO COMPLY WITH THE ORDER PREVIOUSLY VIOLATED.

[CITING] DAVIS;

SYLLABUS    BY    THE    COURT

Under; (3); a prosecutors refusal to comply with a lawful discovery order constitutes " CONTEMPT OF COURT".

Shields claims that; prior to trial his defense counsel ( PAUL DENT) did the same thing that davis lawyer did in his case; he filed

a motion for production on sept 2cnd 2017 with the district court asking that the state be ordered to produce certian items of

evidence before shields trial. the court being well advised in the premisis finds and orders  THAT THE (STATE) and (THE KBI)

and (ITS CRIME LABORATORY) " SHALL PRODUCE" and make available for the defendants counsel the following items:


1). case file, and/ or any other file or record maintained by the laboratory containing information pertaining to this case

included but not limited to the following:

a). inventory of evidence

b). chain of custody records

c). documentation of deviations from standard protocol that occured during all testing procedures.

d). laboratory ( interagency and intra- laboratory) communication logs regarding handling, processing, storage and testing of
evidence specific to this case.

e). a copy of (all) communication records authorizing or requesting specific tests of evidentiary items.

f). (ALL) COMMUNICATION RECORDS REFLECTING AUTHORIZATION TO CONSUME EVIDENCE DURING TESTING.

g). procedures for storage of evidentiary items.

h). all crime laboratory reports.

i).( WORKSHEETS) ,notes, etc.... related to (all analysis) along with communications regarding results or lack therefor

to include visual examination/ testing results, photographs, diagrams& drawings.

j). DNA TYPING RESULTS IN THE FORM OF ELECTRONIC DATA (1) "ARE MANDATORY"( genescan), genotyper, genemapper ID

,genemapper IDX. include complete run folders containing .FSA OR HID files, sample sheets, injection lists and run logs.

other forms of data (quantitation and/ or dna typing) include but are not limited to; real time PCR quantitation data, STR gel

photograps, auto rads from RFLP analysis, photograps of ethidium bromide yield gels, photos or xerox copies of DQ-A or DQa

/ polymaker strips, slot blot membranes, ETC... ( ( produce any other form of data that was used to determine quantity of dna
or genetic profiles from evidentiary items and reference standards. printed copies of data and scanned data (PDFs) are not

acceptable in liue of property fomatted electronic dna data ( see below).

Gene mapper ID or Gene mapper IDX project files (ser files) are not acceptable as a stand alone response to this request

(FSA. OR HID FILES MUST BE PROVIDED).

A MATRIX FILE MUST ALSO BE PROVIDED- THE MATRIX MUST NOT BE INCLUDED WITHIN A PROJEST FILE.

note: ( the original electronic data disc) is supposed to be maintained and safe garded by the crime laboratory, there by prohib-

iting any changes or manipulations from occuring to the ( original data).

k). name of software program/system used during data analysis and or data interpretation ( expert system).

l). dna profile calculation " worksheets";  a copy of all mathematical formulas/ calculations used to generate statistical information relative to dna results. name of software program/ system used for statistical evaluations. (1) cd, thumb drive, email.

m). codis documentation; ( if applicable), written procedures for reviewing dna  records and dna data base information pertaining to codis searches/ matches. include requirements for the upload of dna profiles to LDIS,SDIS, NDIS as well as key board search protocols. include all documentation regarding the verification and resolution of data base matches( all notes worksheets and other materials used in both the administrative and technical reviews). for NDIS participating laboratories utilizing an NDIS approved, internally validated expert system as a means of reviewing and or uploading ddna profiles, please provide name of expert system. include all information/ documentation recieved in response to a q uery of codis data bases regardless of match or non match resolution. this material includes all responses ( wheter stored within the case file or outside of the case file in an electronic format) that were deemed or interpreted as non matches or investigative leads, ETC.... by  the crime laboratory/ analyst.

n). records of any incidents, errors, accidents or non-conformances including contamination or sample errors that occured during testing of evidence from this case at any stage and documentation of corrective actions taken.

2). all laboratory manuals containing information pertinent to any and all analyses performed upon evidence in addition to all quality assurance/ quality control manuals, to include:

a). serology/ biology manual with testing protocols for all body fluid identification tests conducted in this case.

b). dna standard operating procedures/ forensic biology manual detailing all methods involved in conducting dna typing.

c). quality insurance manual

d). interpretation guidelines (to include guidelines for interpreting serology results and dna results), policies/ procedures regarding data interpretation for assignment of allele calls: IE, relative florescent unit threshold level at which an allele assignment (inclusion) is made; peak height ratios at which major and minor profiles are determined within a mixter; RFU threshold level at which exclusions are made and wheter these determinations are made using GENW SCAM/ GENE TYPER. GENE MAPPER ID or  GENE MAPPER IDX software; policies/ procedures regarding; a). statistical calculations and b). stochastic threshold assignment.

3. QUALIFICATIONS/ ACCREDITATION/PROFICIENCY MATERIAL

a). **COPY OF ACCREDITATION CERTIFICATES:**

b). names of all analysts involved in testing, including technical and administrative reviews;

c). copies of cv.s , qualifications, job descriptions and contiuing education records of all persons involved in handling and or analysis of evidentairy items in this case.

d). orginizational chart of the laboratory

e). proficiency test results summary for all analysis involved in the analysis ( summary should include) tests taken at or near the

time of the analysis of evidence for the relevant case.

(        IT IS SO ORDERED        )   JUDGE DEXTER BURDETT.


In shields claim; the **refusal** of district attorneys office and its prosecutors; JENNIFER TATUM; DAN OBEMIER and DAVID SMITH, ( **to obey the order of the court**) was a complete affront to the dignity and authority of the court and was intended intentionally to obstruct the administration of justice. when neither of these prosecutors ( **after conspiring together**) with

mark dupree; they intentionally through malice **blatantly did not comply** with the order issued by judge dexter burdett; which constituted civil contempt of court. these prosecutors actions were "willful" and "contemptous". shields suffered actual prejudice because of the district attorneys office and head district attorneys mark dupree and the prosexcutors who worked under him; JENNIFER TATUM, DAN OBEMIER and DAVID SMITH.

The prejudice that mr shields suffered is blatanly clear; these prosecutors ( **all knew**)  that the rape kit swabs were in fact

"DEFINITIVELY UNIDENTIFIABLE" they knew this (years ago); ( they also knew that; VALLERY FORNOW had knowingly, and

INTENTIONALLY IN "BAD FAITH" ( YEARS BEFORE) HAD WENT INTO THE FREEZER AT (JCCL) AND DESTROYED BIOLOGICAL EVIDENCE IN THIS CASE THAR HAD THE POTENTIAL TO EXHONERATE SHIELDS, ( THEY ALL) KNEW FOR YEARS  THAT THAT EVIDENCE INTENTIONALLY DESTROYED BY HER WOULD HAVE BEEN EVIDENCE; AND THAT ; THAT EVIDENCE WAS EXCULPATORY. ( THEY ALL KNEW THAT YEARS AGO.

These prosecutors also knew and were prepped to know; that the actual dna sample had been consumed by the KCKPD.

THEY ALSO (ALL) KNEW THAT THE TUBE LABLED L-88-0464 WAS A MANUFACTURED TUBE WITH FABRICATED EVIDENCE INSIDE OF IT.

They also knew that shields dna was not in that tube that (they) the prosecutors presented in cyro tube l-88-0464 at his

preliminary hearing and trial.( THESE PROSECUTORS KNEW THAT SHIELDS WAS INNOCENT OF THESE MURDERS);  so they went about shaping; manufacturing; fabricating; falsifying and doing everything they possibly could including blatantly destroying the discovery pages; notes; files, tapes, pictures, videos, of debbie jones etc... etc... intentionally to frame shields for murder by any means nessary.

These prosecutors (all) knew that to comply with the 10 page discovery and inspection motion; and to comply with the order of production ordered by judge dexter burdett would mean the exhoneration of melvin shields.

This district attorney mark dupree and his prosecutors placed pressure on judge dexter burdett to have him taken off the case because he issued that order that this da office **( never planned to comply too)**. The contempt hearing was never held for failure to comply; she never issued a sanction for these prosecutors not complying with a court order; **they (all) knew exactly what they were set out to do. (all) these prosecutors are liable because they (all) knowingly, intentionally, through malice with complete animus towards shields; made sure that; not only would they deny him access to potentially exculpatory evidence that they (all) played a part in destroying (years before) they even charged him; they made absolutely sure they destroyed every road; every pathway; every lane; ( ALL ) ACCESS TO ANY TYPE OF VICTORY. (THEY) THESE PROSECUTORS WHO WERE IN (COLLUSION) WITH MARK DUPREE AND OTHERS, ( KNOWINGLY PARTICIPATED) IN DESTROYING THE (ORIGINAL ELECTRONIC DISC); THE EXTRACTION WORKSHEETS; ( THEY ) DESTROYED ACTUAL TANGIBLE ITEMS OF EVIDENCE IN SHIELDS CASE; ( THEY WAITED) TILL ( ALL) WITNESSES DIED THAT KNEW SHIELDS WAS INNOCENT.( THEY WAITED OVER 20 YEARS TO SHAPE THE DISCOVERY FILE); THEY( ALL KNEW) EXACTLY WHAT THEY WERE DOING;** so when judge burdett signed off on this order of production and they read what the order called for; **( they knew) they were (never) going to comply with that order. they never planned on giving shields a fair trial ( never); the record is obviously clear on that.**

Shields was convicted because the state prosecutors denied him his constitutional rights to a fair trial, shields procedural due process rights, substantial due process rights and his civil rights were violated by the KANSAS CITY KANSAS DISTRICT ATTORNEYS OFFICE (policy) that was written by mark dupree and orchestrated by his prosecutors JENNIFER TATUM, DAN OBIMIER, AND DAVID SMITH. Shields recieved 2 life sentences simply because these prosecutors did not comply with a court order.

**BY THESE PROSECUTORS NOT COMPLYING WITH THAT ORDER WAS A BLATANT OBSTRUCTION OF ADMINISTRATIVE JUSTICE.**

Shields was denied access to (all) biological evidence in this murder case. **(NONE) OF ANY (TANGIBLE OBJECTS) WERE (NEVER) SENT TO GENETIC TECHNOLOGIES FOR RE-TESTING BEFORE SHIELDS TRIAL. SHIELDS WAS NEVER ALLOWED TO HAVE HIS EXPERT ( DISCOVER) OR ( INSPECT) ANY ITEMS THE STATE USED TO CONVICT HIM BY.**

Shields argues that; because these prosecutors did not comply with the production order and he has suffered a conviction ; because of that he is suing ( all) prosecutors involved in his case and MARK DUPREEE **( for his corrupt policy)** that these prosecutors went by.


### CONSTITUTIONAL     LAW

_____


**Scope of protection, personal involvement does not hinge on who has the ultimate authority for constitutionally offence**

decisions. rather the proper focus is a defendants direct participation in, and connection to, the constitutional deprivation.

the requisite casual connection is satisfied if the defendant set in motion a series of events that the defendants ( prosecutors

all knew) or should resonably have know would cause (others) also involved; to deprive shields of his constitutional rights.

In shields DAVIS claim shields cites several cases, one of those cases is  CONNICK V. THOMPSON.

In CONNICK v. THOMPSON ; thompson commenced a civil action under 42 U.S.C.S 1983 alleging that connick and other officials

of the ORLEANS PARISH ( DISTRICT ATTORNEYS OFFICE) and (THE OFFICE ITSELF) had violated his constitutional rights by
wrongfully witholding brady evidence. THOMPSON sought to hold connick and the district attorneys  office liable for failure

adequately to train prosecutors **( concerning thier brady obligations);** in CONNICK V. THOMPSON all (4) prosecutors ( knew)

 that the evidence they were witholding was exculpatory and they intentionally witheld it. **( when ) the failure amounts to
deliberate indifference to the rights of the person with whom the ( untrianed employees) come into contact with;** also in

CONNICK V. THOMPSON the court held; that over 20 years it observed that municipalities failure to provide training may be so

egregious that; even without notice of prior constituional violations, the failure could be properly characterized as a deliberate
indifference to constitutional rights. THOMPSONS 1983 suit proceeded to a jury trial on two theories of libility; ( FIRST);  the

ORLEANS PARISH (OFFICES) official BRADY  policy was unconstitutional; and (SECOND); CONNICK was deliberatly indifferent to

an obvious need to trian his prosecutors about thier brdy obligations.

In shields case  MARK DUPREES ( BRADY POLICY) was the same as " CONNICKS"; connicks policy directed prosecutors to turn
over what was required by state and federal law ( but no more).

The jury found, however that (CONNICK) was deliberately indifferent to the need to train ( prosecutors) about bradys
command. on the special verdict form, the jury was asked the same question that shields is gonna ask;

**" WAS THE BRADY VIOLATION IN THE ARM ROBBERY CASE OR ANY INFRINGEMENTS OF JHON THOMPSONS RIGHTS IN THE
MURDER TRIAL ( SUBSTANTIALLY CAUSED) BY ( MARK DUPREES FAILURE) , THROUGH DELIBERATE INDIFFERENCE, TO**

**TO ESTABLISH POLICIE AND PRCEDURES TO PROTECT ONE ACCUSED OF A CRIME FROM THESE CONSTITUTIONAL
VIOLATIONS?**

also in connick v. thompson; abundant evidence supported the jurys finding that additional brady training was obviously necess-

ary to ensure that brady violations would not occur; and( 1). that connick was the (sole policy maker) and he misunderstood brady. then( 2cnd); that other leaders in the office who bore direct responsibility for training less experienced prosecutors, were similarly uninformed about brady.( 3rd); that prosecutors in the office recieved no brady training. and( 4th);  that the connick office shirked its responsibility to keep prosecutors abreast of relevant legal developements concerning brady requirements, as a result of these multiple shortfalls, it was hardly suprising that brady violations in fact occured, severely undermining the

integrity of thompsons trial. in the 1983 civil trial the court judge instructed the jury ( that individual prosecutor) has a duty to learn of any favorable evidwence known to others acting on the governments behalf in the case, including the police.

In shields current 1983 if it were togo to a trial, shields would like the court to instruct the jury the same way it did in the connick v. thompson case; " that the jury could attribute the violations of shields rights **(directly) to ( prosecutors)** misapprehe-

sion of brady".


The jury  came to the conclusion that ( connicks cavalier approach) to his staffs knowledge and observation of brady requirements **( contributed to a culture of inattention)** to brady in the orleans parish. connick resisted an effort to hold prosecutors accountable for brady compliance because he felt the effect would make his job more difficult.


### THE DIFFERENCE BETWEEN SHIELDS CASE AND THE CONNICK v THOMPSON CASE IS:

In shields case; he alleges that (all) prosecutors knew exactly what they were doing when it pertains to brady; in fact per

record dan obemier is qouting brady to judge JENNIFER MYERS; they debated about what was required in brady. dan obemier told jennifer myers per record that the state is not required to turn this evidence over; mentioning the items of evidence

asked for in the production order. In the thompson v. connick lawsuit; thompson asserted that his case (was not) about a

" single incident"; because  up to 4 prosecutors may have been resonsible for non-disclosure of the crime lab report; they were,

1). GARRY DEEGAN 2). MICHEAL RIEHLMANN, 3). ERICK DUBELIER 4). BRUCE WHITTAKER.

In shields case there are also 4 known prosecutors; 1). MARK DUPREE 2). JENNIFER TATUM 3). DAN OBEMIER and 4). DAVID SMITH. ( all) these prosecutors acted upon the policy laid out by mark dupree; to knowingly participate in the violation of shields constitutional rights; his " procedural due process" rights, his " substantive" due process rights and his civil rights. they (all) acted with deliberate indifference to those rights because of thier personal "animus" toward shields.

In shields civil suit he cites another case; FIELDS V. WHARRIE, 740 F3D 1107. [ HOLDING] ; 1). **THAT A PROSECUTOR DID NOT HAVE ABSOLUTE OR QUALIFIED IMMUNITY TO A CLAIM WHERE THE FABRICATED EVIDENCE ( BEFORE A DEFENDANTS INDICTMENT) IN VIOLATION OF THE DEFENDANTS DUE PROCESS RIGHTS UNDER THE 14TH AMENDMENT EVEN THOUGH THE SAME PROSECUTOR ULTIMATELY TRIED THE DEFENDANT; 2). A PROSECUTOR CANNOT RETROACTIVELY IMMUNIZE HIMSELF BY PERFECTING HIS WRONGDOING THROUGH INTRODUCING THE ( FABRICATED EVIDENCE) AT TRIAL AND ARGUING THAT THE TORT WAS NOT COMPLETED UNTIL A TIME AT WHICH HE HAD AQUIRED ABSOLUTE IMMUNITY.**

In shields 1983 civil suit: mark dupree the head district attorney ( himself) operated under the same policy that he had instructed his prosecutors under him to execute; that policy was to deny shields and ( all) pretrial detainees ( access to all) biological evidence that is exculpatory and favorable to shields and others in wyandotte county.

**That policy created by mark dupree violated shields 4th, 5th, 6th, 8th, and 14th amendment constitutional rights; and 10 to the bill of rights; (all) those who participated and acted with deliberate indifference to mr shields rights through ( knowing participation); being well aware that shields could suffer a conviction because of the denial of his rights ; ARE NOT IMMUNE.**

Shieldsargues again that 1). JENNIFER TATUM, DANIEL OBEMIER, DAVID SMITH ( ALL) prosecutors; by and through the policy implemented by mark dupree, ( all individually) , knowingly, and intentionally participated in the alleged denial of shields consti-tutional rights and civil rights.

2). all of these prosecutors were informed by head disrict attorney  mark dupree , **THAT THEY WERE NOT TO COMPLY WITH ANY PRODUCTION ORDER ISSUED BY JUDGE DEXTER BURDETT AND THEY WERE INSTRUCTED NOT TO DISCLOSE WHAT WAS ASKED FOR IN MOTION FOR DISCOVERY AND INSPECTION FILED BY THE DEFENDANT.**  after the filing of multiple motions by defense attorney paul dent explaining to these prosecutors that they were failing to comply with a production order and multiple discovery requests asking them to turn over to the defenses expert jamie harmon; these prosecutors after being informed and placed on notice that shields rights were being violated as a result of thier failure to disclose evidence favorable to mr. shields, these prosecutors still continued to not comply  with (any) order of the court and (they) (never) disclosed what was required. shields was convicted as a result; which is what they sought dispite the deliberate indifference to shields rights.

3) Head District attorney Mark Dupree created the policy under which these unconstitutional practices occured ; "or" He allowed the continuance of such a policy to continue to govern the actions of His prosecutors who are under Him, He has allowed the unconstitutional custom to remain.

4) Mark Dupree was grossly negligent in supervising subordinates who have committed these wrongful acts to Mr. shields in this case.

5) Because of Head District attorney's negligence; He Mark Dupree has coached Jennifer Tatum, Dan Obemier and David Smith to exhibit deliberate indifferance to the rights of shields(by failing to act) after being placed on notice through the defenses motions that indicated that unconstitutional acts were occuring.

Shields argues in this claim that; "direct participation" as a basis of liability in this context requires 1) intentional participation in the conduct constituting a violation of the victims rights. 2) By one (who knew of ) the facts rendering it illegal; Shields cites several cases in this claim they are; 1)Zahrey v. Coffey; Recognizing a due process clause right "not to be deprived of liberty" as a result of the fabrication of evidence by a government officer acting in an investigating capacity. 2) Kyles v. Whitley, 514 U.S 419,115 S.ct 1555, 131 L.ED @D(1995). Which was a capitol case that was prosecuted by (connicks) office; That garnered attention (because it featured so many instances of the states failure to disclose exculpatory evidence). When questioned about the Kyles case, connick told the jury he was satisfied with his offices practices and saw no need , occasioned by Kyles to make any changes. In both quantity and quality, then the evidence canvassed here was more then sufficient to warrant a jury determination that connick and the prosecutors who served under him were not merely negligent regardiong Brady. (Rather), they were deliberately indifferent to what the Law requires.

In Shields claim; Shields questions the 2016-2022 office policy manual at the KCK District Attorneys office concerning Brady. In the Thompson v. connick case this manual was a compilation of memoranda on criminal law and practice circulated to prosecutors from 1974, when connick became district attorney, through 1987. the manual contained 4 sentences , nothing more on Brady. This slim instruction the jury learned, was notably inaccurate, incomplete, and outdated.

In (soull), the evidence permitted the jury to reach the following conclusions, "first"; connick did not ensure that prosecutors in his office knew thier Brady obligations; He niether confirmed thier familiarity with Brady when he hired them, nor saw to it that training took place on his watch. "Second"; the need for Brady training and monitoring was obvious to connick, indeed he so testified. Third, connicks cavalier approach to his staffs knowledge and observation of Brady requirements contributed to a culture of inattention to Brady in orleans parish. Thompson demonstrated that no fewer than five prosecutors - the four trial prosecutors and Riehlmann-- Disregarded his Brady righs. He established that they had done exactly what the 4 prosecutors had done in shields case; (they kept from him year, upon year, evidence vital to his defense.) Thier conduct thompson showed with equal force, was a forseeable consequence of lack of training in, and absence of monitoring of (a legal requirement fundamental to a fair trial.)

Another case shields cites is; McCaffey v. city of new york; explaining that a 1983 claim arises where

" police or prosecutors" withold evidence that is material to the plainyiffs guilt or punishment.

Another case shields [ cites] is ; HAUGHEY V. PUTNAM; EXPLAINING THAT A PLAINTIFF CLAIMING A CIVIL RIGHTS CONSIPIRACY

( MUST ALLEGE); 1). an agreement between a ( state actor) and a private party; 2). to act in concert to inflict an unconstitutional injury; and ); 3). an overt act done in furtherance of that goal causing damages.

In the HAUGHEY V. PUTNAM 2020 CASE ; HAUGHEY RAISED A PLAUSIBLE INFERANCE THAT (DEFENDANTS ) KNEW OF THE FACTS RENDERING HIS CONDUCT ILLEGAL.

Another case shields [cites] is ; HINCAPIE V. city of NEY YORK, no-18-cv-3432; explaining that officers may be held liable under 42 U.S.C.S 1983 for suppression of exculpatory evidence.

Another case shields [cites] is; BRYSON V. MACY, 611 f. supp 2d. 1234. it states that (Hn 12); to establish supervisor liability under 42 U.S.C.S 1983 a plaintiff must show that (an affirmative link) exists between the constitutional deprivation and either the supervisors persona; participation his exercise of control or direction or his failure to supervise.

under ( Hn 19) [citing];  BRYSON V. MACY;    **LOCAL GOVERNMENTS, CLAIMS BY AND AGAINST**

---

**under the government tort claims act; A CITY, AS A DEFENDANTS EMPLOYER, " IS LIABLE"; exclusively for loss  resulting**

**from the defendants alleged tort if it was committed while she was acting within the scope of her employment.**

In shields claim; shields alleges that (all)  prosecutors by and through and often with head district attorney (all) did the exact

same thing that was done in [cited] case  ZAHREY V. COFFEY, 221 f.3d 34; (they) had to in order to frame shields for these murders;

(Hn 6) **under civil rights law> immunity from liability,**

**" WHEN A PROSECUTOR PERFORMS THE INVESTIGATIVE FUNCTIONS NORMALLY PERFORMED BY A DETECTIVE OR POLICE**

**OFFICER, IT IS NEITHER APPROPRIATE NOR JUSTIFIABLE THAT, FOR THE SAME ACT, IMMUNITY SHOULD PROTECT THE ONE AND NOT THE OTHER"** [ citing] ; ZAHREY V. COFFEY;  **the fact as stated in zahrey v. coffey; that a prosector later called a grand**

**jury to consider the evidence, the (investigative) work produced does not retroactively transform that work from the administrative into prosecutorial".**

Shields argues that (all) prosecutors are not immune in this lawsuit;  **BECAUSE A PROSECUTOR MAY NOT SHIELDS HIS**

**INVESTIGATIVE WORK WITH THE AEGIS OF ABSOLUTE IMMUNITY MERELY BECAUSE, AFTER A SUSPECT IS EVENTUALLY ARRESTED, INDICTED, AND TRIED,, THAT WORK MAY BE RETOSPECTLT DESCRIBED AS PREPARATION FOR A POSSIBLE TRIAL;**

(shields argues that every prosecutor) might then shield himself from liability for any ( constitutional wrong against innocent citizens) by ensuring that they go to trial.

31

SHIELDS ARGUES THAT A PROSECUTOR CANNOT RETROACTIVELY IMMUNIZE HIMSELF FROM CONDUCT BY PERFECTING HIS WRONGDOING THROUGH INTRODUCING THE FABRICATED EVIDENCE AT TRIAL AND ARGUING THAT THE TORT WAS NOT COMPLETED UNTIL A TIME AT WHICH HE HAD ABSOLUTE IMMUNITY. THAT WOULD CREAT A LISCENCE TO LAWLESS CONDUCT, WHICH THE UNITED STATES SUPREME COURT HAS SADI THAT QUALIFIED IMMUNITY IS NOT TO DO.

In shields case; (all) prosecutors led by  MARK DUPREE committed fraud upon the court and they intentionally; " in bad faith", through malice and animus towards mr. shields  the record shows clearly what they did; ( when they set out ) to decieve the jury by the fabricated evidence (that they all) played a part in presenting that evidence to the jury; ( it took them years to master mind thier plan but the plot worked and shields was convicted because of it.

" SHIELDS ARGUES THAT THE DISCOVERY REVEALS EXACTLY WHAT THEY (ALL) DID AND HOW ".

Shields explains to this court that barbra crim swanson testified under oath; and on the stand she clearly stated that when (she) recieved the rape kit from the (KCKPD) or (JCCL) lab ;  SHE STATED WHEN (I) GOT THE KIT; ( THERE WAS NO COTTON LEFT ON THE STICKS) SO I RAN MY ANALYSIS FORM TWO STICKS ( AND NOT ANT COTTON SWABS).

Shields explains that ALAN HAMB the head administrator at (JCCL) who ran the entire lab;  (who also ) along with GARY DIRKS, was the person who first recieved the rape kit from the (KCKPD); he also (was the only witness in shields case " "FOR MR. SHIELDS" and he stated on the stand that he could not say the swabs belonged to shields. ( in fact ) he stated those swabs were " DEFINITIVELY UNIDENTIFIABLE";  but that is not the point; shields explains that ALAN HAMB testified that when the kit got to (JCCL) ; THAT THIOSE SWABS WERE LOCATED IN THE BOTTOM OF A CYRO TUBE LABLED L-88-0464; A TUBE NOT RELATED TO THE MURDER CASE; THERE WERE  FIVE OTHER CASES STACKED ON TOP OF THOSE SWABS AND THERE WAS BIOLOGICAL EVIDENCE FLOATING UNDER THE BOTTOM OF THOSE SWABS.

SHIELDS ARGUES THAT THOSE SAMPLES  (ENTIRELY) " CONSUMED" BY THE (KCKPD) LAB OR THE (JCCL) LAB!
" THERE WAS NO COTTON LEFT"!.

(SHIELDS EXPOSES THESE PROSECUTORS) BECAUSE AT TRIAL " A VIDEO" WAS SHOWN TO THE JURORS AND THAT VIDEO STILL EXISTS (IF) THEY HAVE NOT DESTROYED IT AFTER THEY HEARD OF THIS LAWSUIT!!!. ( IN THAT VIDEO) (THE PROSECUTORS) EXPLAIN TO THE JURORS WHAT THEY ARE LOOKING AT: ON A TABLE THE " SUPPOSEDLY" CONTENTS

OF CYRO TUBE L-88-0464 WERE LAID ON A TABLE;  AND ( TWO FRESH PIECES OF COTTON) WERE AT THE BOTTOM !!!!.

SHIELDS ARGUES THAT THOSE TWO PIECES OF COTTON ( WERE FABRICATED) BY THE PROSECUTORS SO THAT THE JURORS COULD SEE EVIDENCE THAT DID NOT ACTUALLY EXIST. THESE PROSECUTORS (ALL) FABRICATED THAT EVIDENCE AND DECIEVED THE JURORS BY PRESENTING FABRICATED EVIDENCE BEFORE THEM.

SHIELDS ARGUES THAT (ALL) OF THESE PROSECUTORS (KNOWINGLY) PARTICIPATED IN HIS CONTINUAL CONFINEMENT,

( THEY ARE NOT IMMUNE)!!!.

THESE PROSECUTORS ARE BEING SUED ( FOR NOT COMPLYING) WITH THE COURT ORDER ISSUED BY JUDGE DEXTER BURDETT

FOR THE PROSECUTION TO PRODUCE TO THE DEFENCE (ALL) EVIDENCE ORDERED IN THE ORDER OF PRODUCTION SO THAT SHIELDS COULD HAVE HAD A FAIR TRIAL. THE PROSECUTORS FAILURE TO COMPLY VIOLATED SHIELDS "PROCEDURAL DUE

PROCESS RIGHTS", HIS " SUBSTANTIVE DUE PROCESS RIGHTS", HIS " CONSTITUTIONAL " AND HIS "CIVIL RIGHTS".

THESE PROSECUTORS CLEARLY COMMITTED CONTEMPT OF COURT.


RELIEF

_____


Shields asks for relief in his "contempt of court claim" in this form;

First 1). shields asks that this court retain the full record including all 42 pro se motions filed and all the missing pages of discovery ncluding (all) transcripts from pre-trial hearings **and the deposition hearing of gary dirks, and also the video footage**

**showed to the jurors at trial; and also the actual order of production that these prosecutors ( committed contemp of court)**

**by not complying too. also the po se motion for discovery, inspection, and copying.**


Second 2). shields asks that this court would immeadiately recommend a investigator or team of investigators be assigned to investigate the KCK DISTRICT ATTORNEYS OFFICE **for its ( policy) or (manual) on brady; and its prosecutors, MARK DUPREE, JENNIFER TATUM, DANIEL OBEMIER, DAVID SMITH ET...ALL.  ALAN HAMD OF (JCCL) JHONSON COUNTY CRIMINALISTIC**

**LABORATORY, GARY DIRKS OF (JCCL), VALLERY FORNOW OF (JCCL), BARBRA CRIM SWANSON OF THE (KBI), JAMES NEWMAN**

**OF THE (KBI), THE (KCKPD FORENSIC DEPT.) ALL TO INVESTIGATE THE ALLEGED CLAIMS THAT SHIELDS HAS ALLEGED HAPPENED.**

THIRD 3). shields asks that after that investigation and the report confirms the allegations that mr.shields alleged happened in this claim. shields asks that he be compensated in damages in the amount of 200 million dollars from the city of KANSAS CITY

KANSAS; 200 million dollars from THE KANSAS CITY KANSAS DISTRICT ATTORNEYS OFFICE; and 20 million dollars from **(each**

**individual prosecutor) who ( knowingly) participated in the fabrication of those swabs that were presented to the jurors with**

33

the intention to (decieve the jurors) by presenting that fabricated evidence in front of them, and that these prosecutors ( intentionally did not comply) with that court order to make sure that shields would (not have access) to that exhonerative evidence so that shields could get convicted.

Fourth 4.) Shields asks that hese prosecutors would nl longer be able to practice law in the state of kansas because of this contempt of court claim.

Fifth 5). SHIELDS ASKS THAT THE (ASSETS) OF ALL THESE PROSECUTORS (BE FROZEN); ALSO THIER (ESTATES) BE FROZEN UNTIL A CONTRACT HAS BEEN NEGOTIATED AND SIGNED BY ALL PARTIES ABOUT HOW AND WHEN THE INITIATIONS OF THE PAYMENTS WILL BEGIN FOR MR SHIELDS.


SHIELDS 6TH CLAIM;        SHIELDS NEXT RAISES THE CLAIM OF "FRAUD UPON THE COURT"&MALICIOUS PROSECUTION

---

Shields wants this court to be placed on notice that; **THIS EXACT COURT IN WYANDOTTE COUNTY KANSAS HAS A DIRE HISTORY OF ( FRAUD AND CONSPIRACY) BECAUSE OF THE FRAUD AND CONSPIRACY OF TIMOTHY MCINTYRE. THE SHIELDS CASE WAS PROSECUTED IN THAT SAME COURT WITH THE SAME JUDGE DEXTER BURDETT AND THAT SAME DETECTIVE GOLUBSKI; WHO THE PROSECUTORS TRIED TO CONCEAL.**


Shields claims that his case was implemented through a "malicious prosecution" of mr shields. shields alleges that he can prove this fraud through current court records and through the (remaining) parts of discovery that has (not yet destroyed) but now is in danger of being destroyed because of this multi million dollar suit that (all) defendants will not be able to refute or get out of.


Shields claims that his**4th,5th,6th,8th, and 14th amendment constitutional rights have been violated," his procedural due process rights"; his "substantive due process rights"; and his "civil rights" have been violated by (all) defendants mentioned in this claim, JAMES NEWMAN OF THE (KBI), BARBRA CRIM SWANSON OF THE (KBI), THE (KCKPD), THE (JCCL) LAB, GARY DIRKS OF THE (JCCL) LAB, VALLERY FORNOW OF THE (JCCL) LAB. JENNIFER TATUM ( PROSECUTOR), DANIEL OBEMIER (PROSE CUTOR), DAVID SMITH (PROSECUTOR), DETECTIVE TERRY MAST (KCKPD);ET......ALL; UNIDENTIFIED CHEMISTS WHO TOUCHED EVIDENCE.**

Shields claims that this case from its inception was built from **fraud, fabrication of evidence, perjury, the mishandling of evidence, the manufacturing of evidence,( FAILURE TO PRODUCE "ORIGINAL DATA DISC"), COLLUSION, OBSTRUCTION OF**

**ADMINISTRATIVE JUSTICE," INTENTIONAL BAD FAITH DESTRUCTION" OF BIOLOGICAL EVIDENCE,  manifest injustice, tampering with evidence, failure to investigate, deprevation of constitutional rights, FALSE AFFIDAVIT OF INFORMATION,**

**failure to disclose, concealment, direct personal participation, DELIBERATE INDIFFERENCE, FAILURE TO PRESERVE POTENTIONALLY EXCULPATORY EVIDENCE, ( UNAUTHORIZED CONSUMPTION OF DNA EVIDENCE), prosecutorial misconduct,**

**false video footage, ERRONEOUS INTERPRETATION OF DATA, conspiracy, fabricated testimony, overt acts, erroneous evidence, and denied discovery information.**

Shields first claims that the original affidavt of information that provided the rpobable cause to JUDGE AARON T ROBERTS was a false affidavit that contained false information as its basis for probable cause; detective terry mast **intentionally**

**through deciet and with a malicious intent blatantly and he ( knowingly) took the stand to commit perjury after presenting false evidence in the affidavit of information.**

The record will expose the truth of the lie he told the court.  **He completed an obstruction of administrative justice; a clear**

**manifest injustice at the very inception of this case.  DETECTIVE TERRY MAST WAS A KNOW PARTICIPANT IN THIS CONSPIRACY TO FRAME SHIELDS FOR MURDER; HE DIRECTLY PARTICIPATED ) BEFORE SHIELDS WAS EVER CHARGED); HE**

**CONSPIRED TOGETHER WITH DETECTIVE FISCUS, AND SHOMIN AND OTHERS TO COMMIT FRAUD UPON THE COURT BY**

**PRESENTING FALSE EVIDENCE BEFORE THE COURT; KNOWING THAT BY HIM PRESENTING THIS FALSE INFORMATION TO THE**

**COURT WOULD CAUSE A DELIBERATE INDIFFERENCE TO THE RIGHTS OF MR SHIELDS.**

**DETECTIVE TERRY MAST CONSPIRED TOGETHER WITH MARK DUPREE, BARBRA CRIM SWANSON (KBI), JAMES NEWMAN (KBI),**

**GARY DIRKS OF THE (JCCL) LAB, AND VALLERY FORNOW OF THE (JCCL) LAB, PROSECUTORS, JENNIFER TATUM, DAN OBEMIER, AND DAVID SMITH, AND THE (KCKPD) TO FRAME SHIELDS FOR MURDER.**

### PROTECTION OF RIGHTS, SECTION 1983 ACTIONS

---

[citing]; Halseyv. Pfeiffer,750 (Hn6); in the contect of a 42U.S.C.S1983 claim; (WHEN FALSIFIED EVIDENCE IS USED AS A

BASIS TO INITATE THE PROSECUTION ) OF A DEFENDANT , OR IS USED TO CONVICT HIM , ( THE DEFENDANT HAS

BEEN INJURED) REGARD LESS OF WHETER THE TOTALITY OF THE EVIDENCE, EXCLUDING THE FABRICATED EVIDENCE, WOULD

HAVE THE STATE ACTOR A PROBABLE CAUSE DEFENSE IN A MALICIOUS PROSECUTION ACTION THAT A DEFENDANT LATER

BROUGHT AGAINST HIM.

SECTION    1983    ACTIONS,    ELEMENTS

(Hn7);]citing] Halsey v. Pfeiffer 42 U.S.C.S 1983,  provides a civil remedy for the deprivation of any righs, privileges , or
immunities secured by the constitution and laws. TO STATE A CLAIM UNDER 1983 , (A PLAINTIFF MUST) DEMONSTRATE THAT

SOME PERSON DEPRIVED HIM OF A FEDERAL RIGHT AND THAT THE PERSON WHO HAS DEPRIVED HIM OF THAT RIGHT ACTED

UNDER COLOR OF STATE OR TERRITORIAL LAW.

SCOPE,    LAW ENFORCEMENT  OFFICIALS

(Hn13)[citing] Halsey v. Pfeiffer; 42U.S.C.S , WAS INTENDED TO DETER STATE ACTORS FROM USING THIER BADGE OF THIER

AUTHORITY TO DEPRIVE INDIVIFUALS OF THIER FEDERALLY GUARANTEED RIGHTS AND TO PROVIDE RELIEF TO VICTIMS IF
SUCH DETERENCE FAILS. A RULE OF LAW FOR CLOSING CIVIL RECOVERY AGAINST POLICE OFFICERS ( WHO FABRICATE
EVIDENCE), SO LONG AS THEY HAVE OTHER PROOF JUSTIFYING THE INSTITUTION OF THE CRIMINAL PROCEEDING AGAINST

A DEFENDANT, WOULD NOT FOLLOW THE STATUTES COMMAND OR SERVE ITS PURPOSE.

CONSTITUTIONAL  LAW, 'SUBSTANTIVE" DUE    PROCESS

(hN16)[CITING]Halsey v. pfeiffer, 42 U.S.C.S 1983,  THOSE CHARGED WITH UPHOLDING THE LAW ( ARE PROHIBITED) FROM

DELIBERATELY FABRICATING EVIDENCE AND FRAMING INDIVIDUALS FOR CRIMES THEY DID NOT COMMIT.

(Hn18); OFFICERS WHO "CONCEAL" AND "MISREPRESENT" MATERIAL FACTS TO THE DISTRICT ATTORNEY ( ARE NOT
INSULATED) FROM A 42U.S.C.S 1983  , CLAIM FOR MALICIOUS PROSECUTION SIMPLY BECAUSE THE PROSECUTOR, GRAND

JURY, TRIAL COURT, AND APPEALLATE COURT ALL ACT INDEPENDANTLY TO FACILITATE ERRORNEOUS CONVICTIONS.

( IF OFFICERS) INFLUENCED OR PARTICIPATED IN THE DECISION TO INSTITUTE CRIMINAL PROCEEDINGS, ( THEY CAN BE
LIABLE

FOR MALICIOUS PROSECUTION.

In shields claim of fraud of the court and malicious prosecution; shields claims that his constitutional " **substantive due process**" rights were violated by detective TERRY MAST and that he acted with a deliberate indifferance to those rights.

IN SHIELDS CASE ; (2) PRELIMINARY HEARINGS WERE HELD. AT THE FIRST HEARING THE RECORD WILL REFLECT THAT DET. TERRY MAST ENTERED TESTIMONY THAT HE ALSO STATED IN THE AFIDAVITT OF INFORMATION THAT JUDGE ROBERTS USED TO BIND ME OVER FOR TRIAL.

THAT INFORMATION WAS ; A MARVIN JONES OF NO RELATION TO THE JONES FAMILY WAS OUT COLLECTING CANS AND HE SAW WHAT APPEARED TO BE MANNEQUINS LAYING IN THE GRASS; HE SAID THAT MARVIN JONES DID NOT GET OUT OF HIS CAR BUT DROVE TO THE FIRE DEPARTMENT OF KANSAS AVENUE AND TOLD THE FIREDEPARTMENT; HE THEN SAID THE FIRE DEPARTMENT CALLED THE POLICE AND THE POLICE THEN CAME TO THE CRIME SCENE.

(BUT) SHIELDS ARGUES THAT; THAT IS NOT WHAT HAPPENED AND THAT DETECTIVE MAST ( COMMITED PERJURY ON THE STAND); AND HE PRESENTED FABRICATED EVIDENCE IN THE AFFIDAVIT OF INFORMATION THAT HE SUBMITTED TO THE DISTRICT ATTORNEY MARK DUPREE.

SHIELDS ARGUES THAT (THEY ALL KNEW) THE INFORMATION PERTAINED IN THE AFFIDAVIT WAS FASLE AND ( THEY ALL MALICIOUSLY CONTINUED) WITH THE (FRAUD) AND DECIEVED JUDGE AARON ROBERTS.

Shields rgues that the (fraud) beacme clear to him when the court held a second preliminary hearing. at the second preliminary hearing the truth came out when one of the victims mother took the stand; **THE RECORD WILL REFLECT THAT**

**SARA JONES WHO IS THE MOTHER OF THE VICTIM JOLENE JONES; ; SHE TOOK THE STAND AND WHEN SHE TOOK THE STAND CHRISTOPHER CUEVAS QUESTIONED HER; SARA JONES ANSWERED MY DAUGHTER DEB JONES IS THE ONE WHO FOUND THEM;**

**SHE SMELLED THEM AND (SHE) IS THE ONE WHO TOLD THE POLICE WHERE THEY WERE.**

Shields argues that both detectives and the district attorney and both JENNIFER TATUM and DANIEL OBEMIER (**all**) **knew**

**that the information in the affidavit was false yet they wanted shields bound over for a trial for murders that he did not**

**commit; (THEY ALL) went so far as to ( conceal) the truth about about debbie jones;.**

Shields claims that (they); detectives and prosecutors **( intentionnally destroyed exculpatory evidence) out of the discovery**

**including ( the video tape footage of debbie jones) that taken from the palm olive plant that showed debbie jones being in**

**location of the victims.**

**THE STATE ( CONCEALED) THAT EVIDENCE ( AND COMPLETELY HID IT) FROM THE JURORS BECAUSE THEY WANTED TO POINT THE BLAME TO SHIELDS.**

Shields argues that he immeadiately filed a pro se motion for recusal of both prosecutors because **( THEY ) ALLOWED DETECTIVE TERRY MAST TO COMMIT PERJURY ON THE STAND AND ALLOWED THAT FALSE INFORMATION TO GET HIM**

**BOUND OVER FOR TRIAL; Shields in that motion argued that the CALL NEWSPAPER, THE KANSAN, THE KANSAS CITY STAR,**

**THE TOPEKA JOURNAL, THE WITCHITA EAGLE PAPER (ALL)** are kansas papers and it was told in one of those papers preferably

the CALL or the KANSAN, that in fact SARA JONES was telling the truth; in that paper it was clearlly published that debbie jones ( did) find them and when she found them they appeared as if they had cherrios coming out of thier noses.

Shields claims ((**THAT DETECTIVE TERRY MAST FROM ITS INCEPTION PROVIDED A FALSE AFFIDAVIT OF INFORMATION TO THE DISTRICT ATTORNEY; IN FACT ( THEY) BOTH ( TOGETHER CONSPIRED) TO COMMIT FRAUD UPON THE COURT.**

Shields also claims that detectives and prosecutors went farther that to commit fraud upon the court; in thier (conspiracy) to frame shields for murder.

**THE "(SECOND)" THING THEY DID WAS; ( THEY FABRICATED EVIDENCE) AND ( MANUFACTURED EVIDENCE) THAT WOULD**

POINT DIRECTLY TO MR SHIELDS.


The actual record and ( remaining disc overy) that **they have (not yet destroyed); but now is in danger of being destroyed**

**because of this law suit;** exposes exactly what they did and it shows exactly how they went about getting it done. it took them years to put together thier conspiracy;

IN ORDER FOR THEM TO GET IT DONE ( THEY HAD TO KNOWINGLY) "COMMIT PERJURY", ( THEY HAD TO KNOWINGLY),

"FABRICATE EVIDENCE", ( THEY HAD TO KNOWINGLY) , " MANUFACTURE EVIDENCE"; ( THEY HAD TO KNOWINGLY),

"DESTROY (ALL) EXCULPATORY EVIDENCE"; (THEY HAD TO KNOWINGLY) " CONCEAL IMPEACHMENT EVIDENCE";

( THEY HAD TO KNOWINGLY),  " DENY SHIELDS ACCESS ( TO THE ORIGINAL ELECTRONIC DATA AND SOURCE CODE)";

( THEY HAD TO KONOWINGLY) , " CONSPIRE WITH THE KBI".  (THEY HAD TO KNOWINGLY ), " FALSIFY DOCUMENTS";

(THEY HAD TO KNOWINGLY) " DESTROY (ALL) EXTRACTION WORKSHEETS". ( THEY HAD TO KNOWINGLY) " TESTIFY THAT

THE "KBI" DIDNT HAVE PROTOCOLS FOR THE MAINTAINING OF ELECTRONIC DATA AND WORKSHEETS. ( THEY HAD TO

KNOWINGLY) " DESTROY (ALL) RUN LOGS". ( THEY HAD TO KNOWINGLY)  " DESTROY (ALL 8) CIGERETTE BUTTS".

(THEY HAD TO KNOWINGLY ), " WAIT UNTIL ALL WITNESSES FAVORABLE TO SHIELDS HAD DIED. ( THEY HAD TO KNOWINGLY)

" CONSPIRE (ALL TOGETHER) IN ORDER TO FRAME SHIELDS FOR MURDER.

(THEY HAD TO FORCE "VALLERY FORNOW" THROUGH ( COLLUSION) TO BLATANTLY" IN BAD FAITH" WALK INTO THAT

FREEZER AND DESTROY (ALL) EVIDENCE THAT WOULD EXHONERATE MR SHIELDS ( EVEN WHEN SHE KNEW) SHE WOULD BE

FIRED ( THEY ) COERCED HER INTO DOING IT ANYWAY.


Shields claims that the state **(NEVER)** had dna semen samples from him;  **the state did not provide no semen samples from the** KCKPD; shields  argues that ; that was a (lie), a fabrication,;

SHIELDS ARGUES THA T THE DISCOVERY SHOWS THAT THE CYRO TUBE LABLED L-88-0551 WHICH WAS THE CYRO TUBE  OF THE

RAY AND JOLENE MURDER ( DID NOT ) HAVE ANY SEMEN RAPE KIT SAMPLES IN IT ( AT ALL) NONE! ZERO!.


SHIELDS ARGUES THAT ( THEY  ALL) CONSPIRED TOGETHER TO COMMIT FRAUD WHEN THEY PLACED A TUBE LABLED L-88-0464

IN THE RAPE KIT THAT DIDNT BELONG IN THE RAPE KIT; SHIELDS ARGUES THAT (THEY) WENT SO FAR AS TO (MANUFACTURE)

THE CONTENTS OF THE TUBE LABLED L-88-0464 BY ( KNOWINGLY) AND (INTENTIONALLY) , ( THROUGH MALICIOUSNESS) AND

EVIL INTENT, THEY BLATANTLY DISREGARDED "ALL" MR. SHIELDS RIGHTS TO A FAIR TRIAL ( WITH A COMPLETE PLAN) TO

OBSTRUCT (ALL) ADMINISTRATIVE JUSTICE;

(they) placed two pieces of fresh cotton in hthe bottom of that tube labled I-88-0464 that had blood in it ( from a knife that was used in a aggervated battery case). These detectives had to conspire with the (kbi) about the manufacturing of that tube (why)?; BECAUSE THEY KNEW THAT SHIELDS GOT STABBED IN HIS UPPER RIGHT CHEST ( IN KANSAS CITY MISSOURI) IN A BRAWL AT LIBERTY MEMORIAL PARK AND WAS TAKEN TO ST. MARYS HOSPITAL WITH A PUNCTURED LUNG; the knife fight was also mentioned in the kansas city star paper inlike 86-87.


( THE KNIFE TUBE) CONTAINED BLOOD FROM MR. SHIELDS ( NOT SEMEN), DETECTIVES ( LIED)!; The chemist gary dirks and vallery fornow worked together at ( JCCL); but the KCKPD detectives had already manufactured that tube (years ago) before they sent it there. GARY DIRKS JUST FINISHED WHAT DETECTIVES HAD ALREADY BEGUN.


Shields argument from the begining was; ( THE STATE NEVER ) HAD SHIELDS SEMEN SAMPLE AT ALL; ( THEY USED BLOOD) THAT THEY KNEW BELONGED TO SHIELDS FROM A STABBING THAT HAPPENED AT LIBERTY MEMORIAL PARK YESARS AGO.

They lied yto both judge roberts at pre-lim and they lied to jurors at trial.

Shields never robbed those victims (at all); the record will show that (all) thier valubles were still on them when police arrived including jewlery, wallets etc.... IN FACT SOME OF THIER OWN FAMILY MEMBERS WERE CAUGHT AT 2 OR 3 IN THE MORNING BY SECURITY AT A WALNUT COMPANY; THEY WERE CAUGHT TRYING TO HIDE THE VICTIMS PURSE AT A PARKING LOT; IN THE DISCOVERY IT TELLS HOW A MALE FAMILY MEMBER LIED TO DETECTIVES SAYING HE WAS AT EARLINES HOUSE AT 2 OR 3 IN THE MORNING WHEN HE WAS THE ONE CAUGHT AT THAT LOT WITH THE VICTIMS PURSE. ITS ALL IN THE DISCOVERY; BUT THESE CROOKED PROSECUTORS ( CONCEALED) THAT FROM THE JURORS.


Shields argues that after the second preliminary hearing he immeadiately filed a pro se motion asking the court to recuse jennifer tatum and dan obemier ( because the detective had lied on the stand) and she or dan obemier did not correct that lie; ( THEY ALLOWED JUDGE AARON T ROBERTS TO BIND ME OVER FOR TRIAL ON BOTH THOSE LIES);

THE MANUFACTURED L-88-0464 RAPE KIT TUBE THAT HAD SHIELDS BLOOD IN IT FROM BEING STABBED WITH THAT KNIFE IN HIS CHEST; ( BUT NO SEMEN IN THAT TUBE)!!!; THAT WAS A " FAKE" RAPE KIT TUBE! ( MANUFACTURED BY THE KCKPD), FABRICATED BY CROOKED DETECTIVES AND (KBI) WORKERS AND GARY DIRKS AND VALLERY FORNOW OF THE ( JCCL) LAB; TO FRAME SHIELDS FOR MURDER ( WITH A FALSE AFFIDAVIT OF INFORMATION).


Shields argues that he filed another pro se motion as well; ( a motion to produce); shields stated in that motion that he asked the state to produce the name of the captian that worked at the fire department that this ( made up) witness marvin jones talked to; shields asked the state to at least give him the name of the precient of that fire department that this marvin jones drove too. shhields knew (they all) were lying from the start. Shields pro se motion was denied.

That made up witness was already dead (they said); shields stated he was never alive; THEY MADE IT ALL UP TO (CONCEAL)

THE TRUTH ABOUT DEBBIE JONES. Shields argues that the truth came out about the way they (manufactured) the fake rape

tube; dan obemier revealed it when he explained the contents of the tube; per record he stated that ( the biological evidence)

that ( was at the bottom of the tube) floating up under those two fresh pieces of cotton ( were namely blood); HE

DID NOT (EVER) STATE THAT SEMEN WAS FOUND ON THOSE TWO PIECES OF COTTON. Shields argues that; tghrough the

guidence of the KCKPD that I-88-0464 tube was manufactured by gary dirks of (JCCL);  he stated at the deposition hearing that

(he had never before) made a tube like I-88-0464; paul dent questioned him very thouroghly ! paul dent (knew) they were all

lying. GARY DIRKS was in collusion with (all) prosecutors and detective terry mast, and golubski, and mark dupree,jennifer

tatum, james newman, barbra crim swanson, vallery fornow and (all) others who touched evidence in this case;  (IT IS CLEAR)

OBVIOUSLY THAT (THEY) WOULD NOT LET ANYONE TOUCH THIS CASE (UNLESS THEY HAD COMMITTD THEMSELVES TO
PARTICIPATE IN THIER CONSPIRACY TO FRAME SHIELDS FOR MURDER .

Shields argues that every single aspect of this trial was planned and plotted . He filed a motion before he ever went before
judge DEXTER BURDETT, BECAUSE BURDETT WAS THE SAME JUDGE THAT SENT TIMOTHY MCINTYRE TO PRISON FOR 20
YEARS

FOR A MURDER THAT HE ALSO DID NOT COMMIT. SHIELDS ARGUED THAT HE WANTED ANOTHER JUDGE. SHIELDS THEN
FILED ANOTHER PRO SE MOTION  ABOUT THE GIGLIO POLICY IMPLIMENTATION; THE STATE BY DAN OBEMIER STATED ( YEAR
BY

YEAR) THAT THERE ARE NO GIGLIO ISSUES IN THIS CASE; THEN AFTER 3 YEARS AND EXACTLY 3 DAYS BEFORE SHIELDS FIRST

TRIAL DATE;  AT A PRETRIAL HEARING FOR DISSMISSAL; DAN OBEMIER  FINALLY TELLS THE COURT THAT ( THERE IS ) A
GIGLIO

ISSUE IN THIS CASE AND THE GIGLIO ISSUE IS " DETECTIVE GOLUBSKI"; THE SAME DETECTIVE THAT WORKED WITH JUDGE
BURDETT AND DA TERRA MOREHEAD TO FRAME MCINTYRE FOR MURDER, WHOS IS CURRENTLY CHARGED AS A FELON
RIGHT

NOW, AND BEING INVESTIGATED FOR MULTIPLE MURDERS AS WE SPEAK. ( ALSO) THE PROSECUTOR DAN OBEMIER TELLS
THE COURT (ALSO) THAT ; ( THE RAPE KIT SWABS THAT WERE SENT TO ALAN HAMD AT JCCL LAB WERE IN
FACT( DEFINITIVELY

UNIDENTIFIABLE).

Shields alleges in this claim that; the ( prosecutors) and (detectives) , (all lied)!!; ( they all aprticipated) in manufacturing that
fake rape kit tube. Shields argues that the murder case tube was I-88-0551 and it had no swabs in it at all. ( they) switched that
tube.  ( the blood in that I-88- 0464 tube came from a knife that had shields blood on it), because shields had gotten stabbed
with that knife.

( THE DETECTIVES AND PROSECUTORS LIED ABOUT THE RAPE KIT).

Shields argues that the doctor said hed conducted a rape kit, he said he placed the cotton in the kit; ( but the lie became
exposed because barbra crim swanson testified that when she recieved the rape kit at the (KBI) lab 20 years later ( there was

no cotton left).

Shields argues that; somebody lied to frame shields for murder in the same court with that same judge who sent timothy
mcintyre down for 20 years. Shields cites several cses in htis claim; they are; HALSEY V PFEIFFER,750 F3D 273; (Hn2) [citing],

HALSEY; it states, that reasonable inferences can be drawn from the evidence. that inferences must flow directly from admissible evidence in a 42 U.S.C.S claim. (Hn18) [citing] HALSEY,  SCOPE , LAW ENFORCEMENT OFFICIALS

OFFICERS WHO(CONCEAL) AND( MISREPRESENT MATERIAL FACTS) TO THE DISTRICT ATTORNEY ( ARE NOT INSULATED) FROM A 42 U.S.C.S 1983 CLAIM FOR MALICIOUS PROSECUTION SIMPLY BECAUSE THE PROSECUTOR , GRAND JURY, TRIAL COURT, AND APPEALLATE COURT ALL ACT INDEPENDANTLY TO FACILITATE ERONEOUS CONVICTIONS. ( IF THE OFFICERS INFLUENCED)

OR (PARTICIPATED) IN THE DECISION TO INSTITUTE CRIMINAL PROCEEDINGS THEY CAN BE LIABLEFOR MALICIOUS PROSECTIO

A OFFICER WHO FABRICATES EVIDENCE AGAINST A CRIMINAL DEFENDANT TO OBTAIN HIS CONVICTION VIOLATES THE DEFENDANTS ( CONSTITUTIONAL RIGHTS TO DUE PROCESS) WHICH SHIELDS IS CLAIMING HAPPENED IN THIS CLAIM.

Shields [cites] another case; JONES V. CLARK, 690.FED.APPX.344. (Hn1);  UNDER SCOPE, LAW ENFORCEMENT OFFICIALS

it states; to succeed on a malicious prosecution claim under 42 U.S.C.S 1983, the plaintiff must prove, among other things, that there was no probable cause for the crimmminal prosecution. as a general rule, the finding of an indictment, fair upon its face, by a properly constituted grnad jury, conclusively determines the existance of probable cause. the long held exception to that general rule rejected the presumption of probale cause ( when the defendant knowingly or recklessly) presented false testimony to or ( omitted critical information) from, the grand jury in order to obtain that indictment.

( IN SHIELDS CASE THE RAPE KIT WAS MANUFACTURED);  the swabs that were supposed to be shields were in fact

"definitively unidentifiable"; and detective mast (FABRICATED) a false affidavit and presented it to the judge to get shields bound over for trial.

(Hn2) [citing] ; JONES v. CLARK; (the exception) to the presumption of probable cause survives under the following test: where 1). a law enforcement officer in the course of setting a prosecution in motion either knowingly or recklessly makes

false statements ( such as in affidavits or investigative reports) or ( falsifies) or ( fabricates) evidence. 2). the false statements and evidence , together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and 3). the false statements , evidence and omissions do not consist solely of grand jury testimony where

preparation  has a meaning broad enough to encompass ( conspiring to commit perjury) before the grand jury, the prosecution that the grand jury indictment is evidence of probable cause is rebuttable and not conclusive.

(IN SHIELDS CASE); DETECTIVE TERRY MASTS TESTIMONY WAS CONSPIRED (YEARS) BEFORE HE REACHED THE STAND. HIS INTENTION, MOTIVE, PLAN WAS TO INTENTIONALLY COMMIT PERJURY.

Shields [cites] another case in this claim: it is; " In RE investigation of the W.Va state police crime lab, serology div. 190 W.va 32", . Shields argues that a serologist named FRED ZAIN, did the exact same thing that JAMES NEWMAN of the (KBI), GARY DIRKS of (JCCL), VALLERY FORNOW of (JCCL) and BARBRA CRIM SWANSON of the (KBI) and the (KCPD) lab (all) did in shields case; THEY FALSIFIED RESULTS IN SHIELDS TESTING; THEY CHANGED INCONCLUSIVE RESULTS TO CONCLUSIVE AND THEN ( THEY INTENTIONALLY DESTROYED THE ELECTRONIC DATA, THE "SOURCE CODE " THAT THE DATA CAME FROM) AND THE (EXTRACTION WORKSHEETS) THAT WOULD EXPOSE THEM.

But in shields case; the truth came out when james newman of the (KBI) exposed thier plot; he stated on the record that he drove all the way to topeka with the intention and " bad faith motive", he went to ontain the file; and he was sent there to change the numbers in the file; ( HE DID NOT TAKE WITH HIM THE ORIGINAL ELECTRONIC DISC) ; but he changed the numbers in that file to fit shields; ( HE CHANGED ELECTRONIC DATA INFORMATION WITH HIS PEN).

IN THE W.VA INVESTIGATION OF SEROLOGIST FRED ZAIN; IT WAS FOUND OUT THAT FRED ZAIN FALSIFIED RESULTS IN 134 CASES.

In shields case; shields immediately filed a pro se motion for the state to produce any evidence, material, or files, investigative results, reports, disciplinary sanctions, or any docks in pay, demotions, suspensions, involving these four state witnesses; OFFICER ORENDAC, BARBRA CRIM SWANSON, GARY DIRKS, and KRISTEN OLSON. Shields filed this pro se motion because judge JENNIFER MYERS made a false statement in court that the government dont make mistakes , because the judge made that statement shields [cited] the case of IVOR v. LUKE ( 2006); WHERE IN A MR PHILLIP MILLS A FORENSIC DNA EXAMINER WHO WORKED FOR THE USACIL OF THE ( UNITED STATES ARMY CRIMINAL LABORATORY). Mr phillip mills of (USACIL) was suspended in (2005) from DNA case work. in (2004) month of Jan, it was discovered that the same examiner was suspended from a dna case (AFTER PERMITTING CONTAMINATION IN HIS TESTING PROCESS). In (2003) MR. PHILLIP MILLS (cross contaminated/ and or switched samples within and between different cases), " LIKE THEY DID IN SHIELDS CASE.

In (2005) MR PHILLIP MILLS admitted ( TO MAKING A FALSE DATA ENTRY AND CREATING A FALSE DOCUMENT). This same guy that worked for the government of the united states; MR MILLS wrote a memorandum response to the technical review findings in a (USACIL) case; ( THEREIN HE MISREPRESENTED HE HAD EXAMINED EVIDENCE WHEN HE HAD NOT), the same exact thing shields is claiming happened in his case; shields was trying to get judge JENNIFER MYERS to just understand that ( they were framing him and that (they) had ( fabricated false dna data). Shields tried his best to get the judge to see and (actually listen) to what JAMES NEWMAN and BARBRA CRIM SWANSON were stating on the record.

( SHIELDS WENT SO FAR AS TO ASK FOR JENNIFER MYERS RECUSAL BECAUSE SHE WAS CLEARLY ACTING (BIAS) AGAINST MR SHIELDS AND SHE CLEASRLY DID NOT UNDERSTAND THE TESTIMONY THAT WAS BEING GIVEN ABOUT THE BIOLOGICAL DNA

EVIDENCE IN HIS CASE;  IT BECAME CLEAR TO SHIELDS THAT SHE WANTED SHIELDS TO BE CONVICTED; ( ESPECIALLY WHEN

" SHE DID NOT " SANCTION THE STATE FOR THIER CONTEMPT OF COURT).

Shields argues that (all) 42 pro se motyions filed are in the record.

[citing]; IN RE INVESTIGATION OF THE W.VA STATE POLICE CRIME LAB, SEROLOGY DIV. 190 W.VA 32;

HARMLESS AND INVITED ERROR, EVIDENCE

(Hn4); where improper evidence of a nonconstitutional nature is introduced by the state in a crimminal trial, the test to

determine if the error is harmless is: 1). the inadmissable evidence must be removed from the states case and a

determination made as to wheter the remaining evidence is sufficient to convince impartial minds of the defendants guilt

behond a reasonable doubt; 2). ( IF THE REMAINING EVIDENCE IS FOUND TO BE INSUFFICIENT, THE ERROR IS NOT

HARMLESS);

3). if the remaining evidenceis sufficient to support the conviction, an analyst must then be made to determine wheter the

error had any prejudicial effect on the jury.

(IN SHIELDS CASE) THE STATE BY ITS PROSECUTORS CANNOT SAY THAT ANY ERRORS THEY COMMITTED IN HIS CASE (WERE

NOT HARMLESS) THE RECORD IS CLEAR ON THAT.

Shields sues the city of KANSAS CITY KANSAS, and the KANSAS CITY KANSAS DISTRICT ATTORNEYS OFFICE;   THE HEAD

DISTRICT ATTORNEY MARK DUPREE, prosecutors , JENNIFER TATUM, DANIEL OBEMIER, and  david smith; (all) in thier individual

capacities and also the city of OLATHE KANSAS for the (JCCL) laboratories involvement; and the (JCCL) laboratory itself; the

(KCKPD), GARY DIRKS OF JCCL, VALLERY FORNOW OF (JCCL) LAB, BARBRA CRIM SWANSON OF THE (KBI), JAMES NEWMAN

OF THE (KBI), (ALL) KNOWING PARTICIPANTS IN THE FAUD OF THE COURT.

**SHIELDS ALSO SUES FOR MALICIOUS PROSECUTION FOR THE MATERIAL FACT ALSO BELOW:**

The KANSAS legislator issued new legislation concerning dna evidence; THE KANSAS BAR JOURNAL VOLUME 70 issued new

legislation in (2001) called" **LEGISLATIVE WRAP UP".** In that legislation the state of KANSAS (set) a statute of limitations on

(dna) evidence when it involves a sexually violent offence; **( IN SHIELDS CASE) the state prosecutors said one of the victims had been raped. then shot, which made shields case a sexually violent offence.**

Shields argues that even though he knows he didnt rape anyone and didnt leave no dna anyware; he is still aware of

KANSAS LEGISLATION and he filed this pro se mottion to supress any dna evidence because of this legislation;

THE LEGISLATION(**STATED CLEARLY AND PLAINLY);** that ; **the statute of limitations for sexually violent offenses is expanded to state that prosecution of the offense must be commenced ( WITHIN 10 YEARS) or one year from the date which the identity of the suspect is conclusively established by dna testing. which ever is later.**

**( IN SHIELDS CASE); SHIELDS ARGUED IN THAT PRO SE MOTION THAT THE STATUTE OF LIMITATIONS HAD RUN OUT FOR THE STATE REGARDING ( ANY TYPE ) OF DNA EVIDENCE OR FOR THEM TO BE ABLE TO USE IT IN A PROSECUTION THAT SUPPOSEDLY LINKED TO A SEXUALLY VIOLENT CRIME.**

**( IT WAS THE STATE); THAT SAID ON THE RECORD THAT ( SHIELDS) HAD RAPED SOMEONE. SHIELDS ARGUED IN THAT PRO SE MOTION THAT HE CANNOT DEFEND HIMSELF AGAINST A CHARGE THAT ( HE WAS NEVER CHARGED WITH), THOSE CHARGES**

**BEING RAPE AND ROBBERY, WHICH THE STATE SAID SHIELDS HAD DONE. IN THAT PRO SE MOTION SHIELDS ARGUED THE**

**FEDERAL AND STATE STATUTES; THE FEDERAL STATUTE IS: UNITED STATES STATUTES TITLE (18) CRIMES AND CRIMINAL**

**PROCEDURE CHAPTER 213. ( LIMITATIONS) 3297- CASES INVOLVING DNA EVIDENCE;** it states clear and plain; in a case involv-

ing dna evidence: in a case in which dna testing implicated an identified person in the comission of a felony. no statute of

limitations that would otherwise preclude prosecution of the offense shall preclude such prosecution **{ UNTIL A PEROID OF**

**TIME FOLLOWING THE IMPLICATION OF THE PERSON HAS ELAPSED}** , that is equal to the otherwise **" APPLICATION**

**LIMITATION PERIOD".**

**{ THE STATUTE FOR THE STATE OF KANSAS}** , said this;

**KANSAS STATUTES CHAPTER 38 ARTICLE 23. CURRENT THROUGH (2019) KANSAS ACTS CHAPTER 78 K.S.A 38- 2303, TIME**

**LIMITATIONS; under (c) , it states clear and plain; EXCEPT AS PROVIDED IN SUBSECTION (E). A PROCEEDING UNDER THIS CODE FOR ANY ACT COMMITTED BY A JUVENILE ( WHICH IF COMMITTED BY A ADULT) WOULD CONSTITUTE A SEXUALLY VIOLENT CRIME AS DEFINED IN K.S.A 22- 3717 AND AMENDMENTS THERE TO:**

**WHEN THE VICTIM IS 18 YEARS OF AGE OR OLDER ( SHALL BE) COMMENCED WITHIN ( 10 YEARS) OR ( ONE YEAR) FROM THE**

**DATE ON WHICH THE IDENTITY OF THE SUSPECT IS CNCLUSIVELY ESTABLISHED BY DNA TESTING, WHICH EVER IS LATER,**

**UNDER SECTION (A):**

**1. RAPE DEFINED 21-3502**

**2. AGG SODOMY 21-3506**

3. MURDER AS DESCRIBED IN 21-3401, 21-3402, OR 21-3439, 21-5402, 21-5403.

Shields argues that he filed this pro se motion before his trial; HE PLACED THE COURT ON NOTICE BEFORE TRIAL THAT; ANY EVIDENCE THAT THE STATE INTENDED TO USE( UNDER THE PRETENSE OF A RAPE ALLEGATION) COULD NOT BE USED AT HIS TRIAL; PLAINTIFF COULD HAVE BEEN CHARGED WITH MURDER BECAUSE THERE IS NO STATUTE OF LIMITATION ON THE MURDER CHARGE; ( BUT) , ( THERE WAS) A KANSAS STATUTE ON ( DNA) EVIDENCE INVOLVED IN A SEXUALLY VIOLENT CRIME.

The state never charged shields with( rape); they knew that shields didnt rape anyone, ( but they intelligently) "implied" rape because thier intention was to shock the mind of the jurors; which is what they did.


SHIELDS ARGUES IN THIS LAWSUIT THAT AS SOON AS THE STATE (IMPLIED RAPE) ANY DNA EVIDENCE THAT WOULD LINK SHIELDS TO THAT RAPE COULD NOT BE USED; BECAUSE ( IT)!! ( THE ACTUAL DNA)!! HAD A STATUTE OF LIMITATIONS (TIME FRAME) SET ON THAT DNA. THE 10 YEAR STATUTE OF LIMITATIONS HAD BEEN EXPIRED; IN SHIELDS CASE IT HAD BEEN WELL OVER 15, 16 YEARS.


Shields argues that ; by the state judge JENNIFER MYERS and by prosecutor DAN OBEMIER still decideing to push for a conviction and ( by still using the implication of rape) at his trial, ( by them) still trying to use dna after that implication; ( HAVING BEEN PLACED ON NOTICE BY THE DEFENCE); VIOLATED SHIELDS CONSTITUTIONAL RIGHT TO A FAIR TRIAL, A FAIR HEARING. ( THE BLATANT IGNORING) OF KANSAS STATUTE LAW IN ORDER TO GAIN A CONVICTION HAS RAISED A CLEAR CLAIM OF MALICIOUS PROSECUTION.

SHIELDS ARGUES THAT BECAUSE OF (ALL) THESE THINGS AND THE (CUMMULATION) OF THE ( FRAUD) AND THIS; SHIELDS "PROCEDURAL DUE PROCESS", HIS " SUBSTANTIVE DUE PROCESS" AND HIS " CIVIL" RIGHTS HAVE BEEN VIOLATED BY: (ALL) THOSE MENTIONED ABOVE IN THIS ( FRAUD & MALICIOUS PROSECUTION ) CLAIM.

( BECAUSE OF WHAT THEY ALL CONSPIRED TOGETHER TO DO)!.

**RELIEF**

---

Shields asks to be compensated in relief in these forms:

First 1). shields asks that this court retain the full record including (all 42) pro se motions filed and (all) the **missing pages of**

**discovery**, including (all transcripts) from pretrial hearings and **( the deposition hearing of GARY DIRKS);** ( all) the

communication notes from the meeting held by ALAN HAMB of (JCCL), GARY DIRKS,of (JCCL), BARBRA CRIM SWANSON of

the (KBI), JAMES NEWMAN of the (KBI), detectives TERRY MAST and the other detectives , (all) notes from **(DETECTIVE**

**GOLUBSKI)**, and (all) the communication email notes between the (KCMO) police department and the (KCKPD); including (all)

**(concealed)** discovery information that prosecutors **(hid)** intentionally from the defense **( involving DEBBIE JONES, and**

**MARVIN JONES and the fire department on kansas avenue.**

Second 2). Shields asks that this court would immeadiately recomend a team of investigators and assign them to the task of

investigating the (KCKPD), the KCK DISTRICT ATTORNEYS OFFICE; prosecutors JENNIFER TATUM, DANIEL OBEMIER, and DAVID

SMITH, JUDGES AARON T ROBERTS, DEXTER BURDETT, and JENNIFER MYERS;  also the head judge who ruled against the recusal

of JENNIFER MYERS,; shields asks for that team to investigate the ( JHONSON COUNTY CRIMMINALISTIC LABORATORY), ALAN

HAMB of (JCCL), GARY DIRKS of (JCCL), and VALLERY FORNOW of (JCCL), **( who destroyed biological evidence.**

Shields asks for the investigation of BARBRA CRIM SWANSON of the (KBI),JAMES NEWMAN of the (KBI) and the investigation

of ( other) analysts who barbra crim swanson said under oath:  **( that these analysts came from all over and corrected the**

**"discrepancies " that were in the file immeadiately).** shields asks for a ( full investigation) from the judicial administratiion

and from the BAR ASSOCIATION.

Third 3). Shields asks that after a full investigation and shields  allegations of fraud and malicious prosecution have been

confirmed in thier report; shields asks to be compensated in this form:

Shields asks that the city of KANSAS CITY KANSAS  the (MUNICIPALITY) that hired MARK DUPREE; that the city compensate

him in the amount of 200 million dollars.

**SHIELDS ARGUES THAT THE DISTRICT ATTORNEYS HIRED BY THAT CITY; ( HAVE A HISTORY OF FRAUD IN THE WYANDOTTE**

**COUNTY DISTRICT ATTORNEYS OFFICE); " IN PARTICULARLY" THE (EXACT) SAME COURT ROOM WHERE THE ( FRAUD AND**

**CONSPIRACY) OF TIMOTY MCINTYRE WAS FRAMED AT!, ( BY SOME OF THE SAME INDIVIDUALS) WHO ALSO PLAYED A PART**

47

IN MCINTYRES CONVICTION, THOSE BEING ( JUDGE DEXTER BURDETT AND DETECTIVE GOLUBSKI).

Shields asks that each prosecutor ( individually) compensate him ( for thier knowing participation); in the amount of 10 million dollars. Shields asks that each detective ( held responsible for fabricating evidence), destroying discovery information and committing perjury on the stand, violating miranda etc...... shields asks that each one compensate him in the amount of 10 million dollars for framing and shaping evidence in shields case to frame him for murder.

Shields also asks that the city of (OLATHE KANSAS) compensate him in the amount of 200 million dollars for the involvment of its (JCCL) laboratory.

Shields asks that the actual (JCCL) laboratory itself also compensate him for its chemists or analysts involvement in the framing of shields in the amount of 200 million dollars.

SHIELDS ASKS THAT GARY DIRKS OF (JCCL) AND VALLERY FORNOW OF (JCCL) EACH COMPENSATE HIM IN THE AMOUNT OF 20 MILLION DOLLARS EACH ( FOR THIER KNOWING PARTICIPATION) IN MANUFACTURING THE "FAKE" L-88-0464 CYRO TUBE; ( AND FOR INTENTIONALLY) " IN BAD FAITH " DESTROYING THE BIOLOGICAL EVIDENCE THAT WOULD EXHONERATE SHIELDS.

Shields asks that (all) forensic analysts ( individually) who came ( from other labs) from all over and touched this evidence and played a part in shaping this evidence to frame shields, ( that falsified) data information in this case; shields asks that each individual chemist compensate him in the amount of 2 million dollars.

SHIELDS ASKS THAT BARBRA CRIM SWANSON OF THE (KBI) , AND JAMES NEWMAN OF THE (KBI) BOTH ( INDIVIDUALLY) COMPENSATE HIM IN THE AMOUNT OF 10 MILLION DOLLARS.

Fourth 4). Shields asks that the (KBI) compensate him in the amount of 200 million dollars; FOR COERCING AND SENDING ITS WORKERS; BARBRA CRIM SWANSON AND JAMES NEWMAN OF THE (KBI) TO INTENTIONALLY COMMIT PERJURY ON THE STAND; FOR SENDING THEM TO CHANGE ELECTRONIC DATA INFORMATION WITH THIER WRITING PENS; ( FOR DESTROYING THE ORIGINAL ELECTRONIC DISC AND THE " SOURCE CODE " THAT THAT DISC WAS MADE FROM) IN ORDER TO HELP THE CROOKED DETECTIVES IN WYANDOTTE COUNTY, AND THE CROOKED DISTRICT ATTORNEY AND PROSECUTORS IN WYANDOTTE COUNTY TO FRAME INDIVIDUALS IN CRIMMINAL PROSECUTIONS IN THAT COUNTY; FOR ALSO ( INTENTIONALLY DESTROYING EXTRACTION WORKSHEETS, RUN LOGS, ETC....! BASICALLY (ALL) BIOLOGICAL EVIDENCE THAT WOULD HAVE THE POTENTIAL TO EXHONERATE MR SHIELDS; ( ESPECIALLY FOR PARTICIPATING IN THE KNOWN MANUFACTURING OF CYRO TUBE L-88-0464); ( AND FROM USING THE BLOOD ON THE KNIFE FOUND IN KCMO AGG BATTERY

CASE) ; ( TO ACT AS SEMEN) IN THE FRAMING OF SHIELDS IN A 30 YEAR OLD COLD CASE MURDER.

**SHIELDS ARGUES THAT THIS COURT IN WYANDOTTE COUNTY KANSAS, ( HAS A HISTORY OF COMMITTING FRAUD AND CONSPIRACY)!!!; WITH KNOWN INDIVIDUALS FROM THE MCINTYRE CONSPIRACY.**

Fifth 5). shields asks that the state be ordered to produce the case that the I-88-0464 cyro tube came from; **TO PROVE TO THE COURT THAT THIS EVIDENCE WAS MANUFACTURED, AND TO VERIFY SHIELDS ALLEGATIONS.**

Sixth 6). shields asks that every single ( entity) and ( every individuals estate) and or (assets); be frozen including retirement funds, pensions, 401kplans, etc.... until complete negotiations have been held and a contract has been signed by all parties that will clarify the initiations of payments to my shields.

CERTIFICATE   OF   SERVICE

I MELVIN SHIELDS , MAILED A COPY OF THIS AFFIDAVIT IN SUPPORT OF THIS 42 U.S.C.S 1983 civil rights suit; to the UNITED STATES COURT CLERK IN TOPEKA KANSAS " MR TIMOTHY"  ON 22 DAY OF nov. 2022.

_Melvin Shields 47149 #_

SUBMITTED BY